See also 813 F.Supp. 372, 826 F.Supp. 1533, 826 F.Supp. 1527.

UNITED STATES of America

v.

John F. "Duffy" CONLEY, William C. CURTIN, Sheila F. Smith, John Francis "Jack" Conley, Thomas "Bud" McGrath, Mark A. Abbott, Thomas Rossi, William Steinhart, Roberta Fleagle, Robin Spratt, Monica C. Kail, William J. Reed, Joanne T. Smith, Kenneth "Ron" Goodwin, Lawrence N. "Neudy" Demino, Sr., Christopher "Chris" Kail, Frank Garofalo, Thomas D. Ciocco, Michael Sukaly, Phillip M. "Mike" Ferrell, Anestos "Naz" Rodites, and William E. Rusin, Defendants.

Crim. No. 91–178.

United States District Court, W.D. Pennsylvania.

June 17, 1993.

Thomas W. Corbett, Jr., U.S. Atty., W.D. PA, James R. Wilson, Paul E. Skirtich, Asst. U.S. Attys., for plaintiff.

James Wymard, William Difenderfer, Ellen Viakley, Gary Gerson, Anthony Mariani, Lee Markovitz, Ray Radakovich, Stanley Greenfield, Martha Bailor, Frank W. Ittel, Jr., Raymond M. Maloney, John Zagari, Foster Stewart, Edward J. Osterman, Carl M. Janavitz, Carmen A. Martucci, Joel Johnston, John Goodrich, Vincent Baginski, Samuel J. Reich, William Acker, Joseph Kanfoush, Michael Foglia, Carl Parise, and Caroline Roberto, Pittsburgh, PA, for defendants.

## MEMORANDUM OPINION

LEE, District Judge.

Presently before the Court is Defendant William E. Rusin's Motion to Quash County Twenty–Six of Indictment for Violation of Rule 8(a), Fed.R.Crim.P. (Document No. 364).

On September 20, 1991, a Grand Jury indicted Defendant William E. Rusin ("Rusin") and twenty-two others in a twenty-nine count indictment.

Count One charges all Defendants with a dual-object conspiracy in violation of 18 U.S.C. § 371. The objects of the conspiracy are alleged to be, first, taking part in an illegal gambling business involving video poker machines in violation of Pennsylvania law and 18 U.S.C. § 1955 and, second, laundering the proceeds of the illegal gambling business in violation of 18 U.S.C. § 1956(a)(1)(A)(i), that is, conducting and attempting to conduct financial transactions affecting interstate commerce by receiving, transferring, delivering, depositing and otherwise transacting cash proceeds of the video poker gambling with the intent to promote the carrying on of video poker gambling.

Count Two charges all Defendants with taking part in an illegal gambling business involving video poker machines in violation of Pennsylvania law and 18 U.S.C. § 1955.

Counts Three through Twelve charge Defendants other than Rusin with substantive crimes involving interstate activity regarding gambling.

Counts Thirteen through Twenty–Nine charge substantive violations of the money laundering statute, 18 U.S.C. 1956(a)(1)(A)(i).[1] Count Twenty–Six charges Rusin and John F. "Duffy" Conley ("Duffy Conley") with the substantive crime of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) & § 2. Count Twenty–Six states:

The grand jury further charges:

*On or about the period 1988 and 1989,* within the Western District of Pennsylvania and elsewhere, the defendants JOHN F. "DUFFY" CONLEY and WILLIAM RUSIN did knowingly conduct and attempt to conduct *financial transactions,* affecting interstate or foreign commerce, by depositing and/or causing to be deposited, monetary instruments to the Duffy Vending Accounts, account # 2–680118 and account # 2–746105 through the Robinson Township Branch of Pittsburgh National Bank, which involved the proceeds of a specified unlawful activity, that is, illegal gambling involving video poker machines, knowing that the property involved in such financial transactions, that is, monetary instruments in the form of United States currency or coin or checks, represented the proceeds of the illegal gambling activity. This was done with the intent to promote the carrying on of a specified unlawful activity, that is, illegal gambling with video poker machines.

1. The Defendants charged in Counts Thirteen through Twenty–Nine are reflected *infra,* p. 1539 note 3.

All in violation of Title 18, United States Code, § 1956(a)(1)(A)(i) and § 2.

Indictment, Count Twenty–Six, at 59 (Document No. 1) (emphasis added). Rusin challenges County Twenty–Six on the grounds that it is duplicitous in violation of Federal Rule of Criminal Procedure 8(a).

The Court has allowed Defendants to move to join in each others pretrial motions. Defendants Duffy Conley, Mark A. Abbott, ("Abbott"), Michael Sukaly ("Sukaly") and Frank Garofalo ("Garofalo") have joined in the motion before the Court. In light of the grounds advanced in opposition to and in support of Count Twenty–Six, the counts charging these joining Defendants are indistinguishable from County Twenty–Six in all material respects.[2] The Court, therefore, deems the counts in which the joining Defendants have been charged with money laundering to be fairly implicated, in whole or in part, by the present motion and the joinders therein.[3] The Court's references to Count Twenty–Six in the following Discussion apply equally to all the implicated counts.

### Discussion

■ In a federal criminal prosecution, joinder of counts and defendants within an indictment is governed by Federal Rule of Criminal Procedure 8, which provides:

### RULE 8. Joinder of Offenses and of Defendants

**(a) Joinder of Offenses.** Two or more offenses may be charged in the same indictment or information *in a separate count for each offense* if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based·on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

**(b) Joinder of Defendants.** Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Fed.R.Crim.P. 8 (1993) (emphasis added). "Duplicity is the joining of two or more distinct offenses in a single count, so that a general verdict does not reveal exactly which crimes the jury found the defendant had committed." *United States v. Gomberg,* 715 F.2d 843, 845 (3d Cir.1983), *cert. denied,* 465 U.S. 1078, 104 S.Ct. 1439, 1440, 79 L.Ed.2d 760 (1984), *overruled on other grounds, Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). The question presented in this motion is whether Count Twenty–Six charges Rusin and Duffy Conley with more than one offense.[4]

---

2. The Indictment does not charge Abbott with substantive money laundering. His motion to join in Rusin's motion will be denied as moot.

3. The counts implicated in whole are counts in which all charged Defendants have joined in the present motion. These counts all charge Duffy Conley and are Counts 13–14, 16–17, 23, 25, 26 (with Rusin), and 27–28. The counts charging Duffy Conley and Defendants who have not joined in Rusin's motion are Counts 18 (with Monica C. Kail), 22 (with Sheila F. Smith) 24 (with Joseph A. Devita) and 29 (with Phillip M. "Mike" Ferrell, Thomas Ciocco, Roberta Fleagle, and Kenneth W. "Ron" Goodwin). Sukaly and Garofalo are charged in Count 21 (with Sheila F. Smith, Christopher "Chris" Kail and Phillip M. "Mike" Ferrell). Fourteen of the seventeen money laundering counts are implicated in whole or in part. Counts 15, 19 & 20 are also indistinguishable in all material respects, but no motion or motion to join has raised the issue of duplicity

regarding these two counts. Count 19 charges William J. Reed, who has plead guilty to all charges.

4. Although it has been held that Rule 8(a)'s one offense-one count limitation on joinder of offenses does not apply to an indictment returned against multiple defendants, *see United States v. Castellano,* 610 F.Supp. 1359, 1408 (S.D.N.Y. 1985), this Court reads the Rule as a whole as requiring defendants charged in a single count to be charged with a single offense. As criminal charges are becoming more and more complex and the Government is indicting in a single indictment ever-larger numbers of defendants, such rule can only have a salutary effect on the clarity of issues raised during the prosecution. In any event, a duplicity challenge to a single count charging more than one defendant with more than one offense lies notwithstanding the supposed inapplicability of Rule 8(a). *Id.* at 1408–09.

The Government contends that the Count Twenty–Six properly alleges a course of conduct that states a single offense in one count, despite its express allegation of more than one "financial transaction." It frames the issue as "[m]ay money laundering, pursuant to 18 U.S.C. § 1956(a)(1)(A)(i), which takes place on a number of occasions over a period of time—though always involving the same defendant, the same financial institution and exactly the same kind of financial transaction—be charged as a course of conduct in one count." Government's Second Omnibus Response to Defendants' Pretrial Motions, at 8–9 (Document No. 666) ("Second Omnibus Response"). In support of an affirmative answer to the question thus framed the Government advances two principal contentions and one subsidiary contention.

First, the Government contends that its course-of-conduct charge meets the so-called "Blockburger test." See Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The Government states:

> The test for determining whether several offenses or only one has been charged is to determine whether identical elements will be proved relative to each event or if any event during the course of conduct requires proof of varying elements.... Here, of course, the elements to be proven relative to each event during the course of conduct will be identical.

Second Omnibus Response at 10–11 (citations omitted). Subsidiary to this contention is the contention that the Indictment alleges one continuing offense, but multiple means of committing it. Id. at 9, 10.

Second, the Government contends that Rusin will suffer none of the prejudice associated with a duplicitous indictment. Moreover, it asserts that Rusin will actually benefit

from the double-jeopardy implications of the course-of-conduct charge.

The Court finds the Government's contentions to be without merit. The offense of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), as defined by Congress, is not a continuing, course-of-conduct offense. Moreover, the likelihood of prejudice in this case is palpable, assuming a showing of such a likelihood is required in a pretrial challenge to a count charging an offense that was not defined by Congress.

### A. Money Laundering Cannot be Charged as a Course of Conduct

■ The disposition of this motion is controlled by Blockburger—but not by the so-called "Blockburger test," as the Government would have it. The defendant in Blockburger was convicted on counts two, three and five of an indictment. Count two charged an illegal sale of drugs not in the original stamped package on a specified day. Count three charged an illegal sale of drugs not in the original stamped package to the same purchaser on the day after the day specified in count two. Count five arose from the same sale of drugs as count three, but charged that the sale was made not pursuant to a written order from the purchaser. Blockburger, 284 U.S. at 301, 52 S.Ct. at 181.

The defendant challenged his conviction and sentence on both counts three and five on the ground that the counts were based upon the same act, yet charged under different statutes. The Court, after enunciating the now-familiar "Blockburger test," found that convicting and sentencing the defendant on both count three and count five passed muster under it.[5]

---

**5.** The Court stated the "Blockburger test" as follows:

> Each of the offenses created requires proof of a different element. The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

Id. 284 U.S. at 304, 52 S.Ct. at 182 (emphasis added). That the "Blockburger test" remains limited to a single act violating two or more statutes, and is irrelevant to defining the scope of a single offense, can be seen in Sanabria v. United States, 437 U.S. 54, 70 & n. 24, 98 S.Ct. 2170, 2182, n. 24, 57 L.Ed.2d 43 (1978). Contra United States v. Kearney, 444 F.Supp. 1290, 1294–95 (S.D.N.Y.1978) (citing Bins v. United States, 331 F.2d 390, 393 (5th Cir.), cert. denied, 379 U.S. 880, 85 S.Ct. 149, 13 L.Ed.2d 87 (1964)).

Relevant to the present motion is the *Blockburger* Court's analysis of counts two and three and the defendant's challenge to conviction and sentence on both. The defendant contended that the first sale and the second sale were part of a continuing offense. The evidence showed that on the first day, shortly after the first sale, the purchaser paid for the second quantity of drugs, which were not delivered until the second day. The Court compared *In re Snow*, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887) with *Ebeling v. Morgan*, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915). *In re Snow* addressed the offense of cohabitating with more than one woman, of which the Court stated:

"It is, inherently, a continuous offense, having duration; and not an offense consisting of an isolated act. * * *

"A distinction is laid down in adjudged cases and in text-writers between an offense continuous in its character, like the one at bar, and a case where the statute is aimed at an offense that can be committed *uno ictu* [sic]."

*Blockburger*, 284 U.S. at 302, 52 S.Ct. at 181 (quoting *In re Snow*, 120 U.S. at 281, 286, 7 S.Ct. at 559, 562). In contrast, *Ebeling* addressed the offense of willful tearing of mailbags with the intent to rob. After examining the words of the statute, the *Ebeling* court stated:

"These words plainly indicate that it was *the intention of the lawmakers* to protect each and every mail bag from felonious injury and mutilation. Whenever any one mail bag is thus torn, cut, or injured, the offense is complete. Although the transaction of cutting the mail bags was in a sense continuous, the complete statutory offense was committed every time a mail bag was cut in the manner described, with the intent charged. The offense as to each separate bag was complete when that bag was cut, irrespective of any attack upon, or mutilation of, any other bag."

*Blockburger*, 284 U.S. at 303, 52 S.Ct. at 182 (quoting *Ebeling*, 237 U.S. at 629, 35 S.Ct. at 711) (emphasis added by this Court). The *Blockburger* Court also stated, " 'The test is whether the individual acts are prohibited, or the course of action which they constitute. If

the former, then each act is punishable separately. * * * If the latter, there can be but one penalty.' " *Id.* 284 U.S. at 302, 52 S.Ct. at 181 (quoting Wharton's Criminal Law § 34 n. 3 (11th Ed.)). The *Blockburger* Court found *Ebeling* to be controlling. The Court looked to the legislative intent as manifested in the words of the statute before it and stated:

The Narcotics Act does not create the offense of engaging in the business of selling the forbidden drugs, but penalizes any sale made in the absence of either of the qualifying requirements set forth. Each of several, successive sales constitutes a distinct offense, however closely they may follow each other.

*Id.* This focus on congressional intent has continued to this day. *See United States v. Martin*, 933 F.2d 609, 611 (8th Cir.1991); *United States v. UCO Oil Co.*, 546 F.2d 833 (9th Cir.1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977).

In a related context, the Supreme Court has emphasized that Congress defines what is the "allowable unit of prosecution." In *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), the Court faced the issue of whether an appeal by the government was barred by the double-jeopardy clause.

The defendant was being tried for engaging in an illegal gambling business with two objects—numbers-running and horse-betting. The district court, learning that the state statute cited in the indictment was not the statute that made numbers-running a crime, ultimately struck all evidence of numbers-running and granted Sanabria's motion for judgment of acquittal on the grounds that the only evidence connecting him to the gambling business was evidence of numbers-running. The Supreme Court assumed, and intimated, that the district court's interpretation of the indictment and the law was erroneous; connection to an illegal gambling business properly charged and proved to have engaged in horse-betting could be made by showing that the defendant was connected to the illegal gambling business through numbers-running.

The Court first focused upon what the indictment actually alleged and the order granting a judgment of acquittal. The Court concluded that, contrary to the government's position, the striking of the numbers-running evidence was an evidentiary ruling, not a dismissal of the numbers-running object. Hence, the judgment of acquittal was entered as to both objects, and the government's appeal was barred.

The Court, however, addressed the government's contention as it was framed—assuming that one object of the gambling business had been dismissed before the judgment of acquittal. Addressing this contention, the Court stated:

> It is Congress, and not the prosecution, which establishes and defines offenses. Few, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses.... But once Congress has defined a statutory offense by its prescription of the "allowable unit of prosecution," ... that prescription determines the scope of protection afforded by a prior conviction or acquittal. *Whether a particular course of conduct involves one or more distinct "offenses" under the statute depends on this congressional choice.*

*Id.* at 69–70, 98 S.Ct. at 2181 (emphasis added and citations deleted). Because the government had alleged and conceded that only one illegal gambling business existed and the illegal gambling business was the allowable unit of prosecution, the acquittal as to one object on the ground that the defendant was not connected to the illegal gambling business barred reprosecution as to any aspect of that illegal gambling business and, therefore, the appeal before the Court.

Turning to the Indictment in this case and 18 U.S.C. § 1956(a)(1)(A)(i), the Court's task is simply to determine whether the course-of-conduct charge of Count Twenty–Six is an allowable unit of prosecution as created, defined and intended by Congress.

The starting point in determining the intent of Congress is, of course, the language of the statute. The pertinent sections are:

> § 1956. Laundering of monetary instruments

(a)(1) Whoever, knowing that the property involved in *a financial transaction* represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such *a financial transaction* which in fact involves the proceeds of specified unlawful activity—

(A)(i) with the intent to promote the carrying on of specified unlawful activity;
. . .

\* \* \* \* \* \* .

(B) knowing that *the transaction* is designed in whole or in part—

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

(ii) to avoid a transaction reporting requirement under State or Federal law,

\* \* \* \* \* \*

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in *the transaction,* whichever is greater, or imprisonment for not more than twenty years, or both.

(b) Whoever conducts or attempts to conduct *a transaction* described in subsection (a)(1), or a transportation, transmission, or transfer described in subsection (a)(2), is liable to the United States for a civil penalty of not more than the greater of—

(1) the value of the property, funds, or monetary instruments involved in the *transaction;* or

(2) $10,000.

(c) As used in this section—

(1) the term "knowing that the property involved in *a financial transaction* represents the proceeds of some form of unlawful activity" means that the person knew the property involved in *the transaction* represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law, regardless of whether or not such activity is specified in paragraph (7);

(2) the term "conducts" includes initiating, concluding, or participating in initiating, or concluding *a transaction;*

(3) the term "transaction" includes *a* purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition, and with respect to a financial institution includes *a* deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, purchase or sale of *any* stock, bond, certificate of deposit, or other monetary instrument, use of a safe deposit box, or *any* other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected;

(4) the term "financial transaction" means (A) *a transaction* which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) *a transaction* involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree;

(5) the term "monetary instruments" means (i) coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, and money orders, or (ii) investment securities or negotiable instruments, in bearer form or otherwise in such form that title thereto passes upon delivery;

\* \* \* \* \* \*

(f) There is extraterritorial jurisdiction over the conduct prohibited by this section if—

(1) the conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States; and

(2) *the transaction* or series of related transactions involves funds or monetary instruments of a value exceeding $10,000.

\* \* \* \* \* \*

18 U.S.C. § 1956 (1993) (emphasis added). The Court finds that the intended allowable unit of prosecution under Section 1956(a)(1)(A)(i) is manifest in the language of the statute itself and the allowable unit of prosecution comprises only one "financial transaction."

The definition of "transaction," stated in the singular, lists single discrete acts, also stated in the singular. Congress employed the words "a" and "any" to modify the listed discrete acts. *Id.* § 1956(c)(3). The clear import of this is that one of those acts, individually, meets the definition of a "transaction."

The definition of "financial transaction," stated in the singular, incorporates the definition of "transaction," which is again stated in the singular in the definition of "financial transaction." *Id.* § 1956(c)(4).

Using these definitions, Congress defined the offense, the allowable unit of prosecution and the punishment in question in Section 1956(a)(1)(A)(i). Stripped of offenses not charged and qualifications of the charged offense not relevant to the allowable unit of prosecution, Section 1956(a) states:

(a)(1) Whoever ... conducts or attempts to conduct such *a financial transaction* ...

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in *the transaction,* whichever is greater, or imprisonment for not more than twenty years, or both.

*Id.* § 1956(a). Reading Section 1956(b) confirms that "a transaction" is the allowable unit of prosecution under section (a)(1), just as "a transportation, transmission, or transfer" is under section (a)(2).

Without further belaboring the point, the statute makes repeated references to single transactions. The only reference to a "transaction or series of related transactions" is made in section (f)(2). That section defines the scope of Congress's assertion of extraterritorial jurisdiction. It plays no part in Congress's definition of the offense and the allowable unit of prosecution.

The words of the statute are plain and unambiguous. Congress defined the offense and the allowable unit of prosecution. The allowable unit of prosecution under section 1956(a) is each individual "financial transac-

tion." *Accord United States v. Martin*, 933 F.2d 609, 611 (8th Cir.1991). The meaning of the statute being plain, resort to the statute's legislative history is unwarranted, and unfavorable to the Government in any event.[6]

Count Twenty–Six of the Indictment alleges "financial transactions." Moreover, the Government attempts to justify this allegation as a statement of a continuing offense. Count Twenty–Six is duplicitous for alleging more than one financial transaction in a single count. Alleging money laundering over a period of time as a continuous, course-of-conduct offense is improper in that Congress has defined no such offense.[7]

### B. Prejudice to Defendants

The Government contends that no prejudice inheres in its course-of-conduct money laundering charge. Although the Court doubts that a defendant must show prejudice in order to succeed in a pretrial challenge to a count charging him or her with an offense not defined by Congress, it need not decide the issue. In this case, potential prejudice abounds.

In *United States v. Starks*, 515 F.2d 112, 116–17 (3d Cir.1975), the Third Circuit defined duplicity and its attendant vices. The court stated:

> Duplicity is the joining in a single count of two or more distinct and separate offenses. [footnote omitted] One vice of duplicity is that a general verdict for a defendant on that count does not reveal whether the jury found him not guilty of one crime or not guilty of both. Conceivably this could prejudice the defendant in protecting himself from double jeopardy. Another vice of duplicity is that a general verdict of guilty does not disclose whether the jury found the defendant guilty of one crime or of both. Conceivably, this could prejudice the defendant in sentencing and in obtaining appellate review. A third vice of duplicity is that it·may prejudice the defendant with respect to evidentiary rulings during the trial, since evidence admissible on one offense might be inadmissible on the other. [footnote omitted]
>
> Joining conspiracy and substantive offenses in the same count present this vice in a particularly aggravated form, because of the admissibility of declarations made by coconspirators. Assuming such a joinder, and a general guilty verdict, there would ordinarily be no way of discerning whether the jury found the defendant guilty of the offense in proof of which such coconspirator's admissions were properly admitted. Finally, there is no way of knowing with a general verdict on two separate offenses·joined in a single count whether the jury was unanimous with respect to either.

*Id.* (emphasis added). To one. degree or another, these vices afflict the course-of-conduct money laundering charge.

■ Generally, where one count specifies two offenses—for instance two specific financial transactions, in violation of Section

---

**6.** For instance, the Senate Report states:
It should be noted that each transaction involving "dirty money" is intended to be a separate offense. For example, a drug dealer who takes $1 million is cash from a drug sale and divides the money into smaller lots and deposits it in 10 different banks (or in 10 different branches of the same bank) on the same day has committed 10 distinct violations of the new statute. If he then withdraws some of the money and uses it to purchase a boat or condominium, he will have committed two more violations, one for the withdrawal and one. for the purchase.
S.Rep. No. 433, 99th Cong.2d Sess. 12 (1986). The Government's argument in support of its course-of-conduct charge makes no reference whatsoever to congressional intent.

**7.** The Government's subsidiary contention—that Count Twenty–Six alleges alternative means to commit an offense—also fails because Congress defined the allowable unit of prosecution as each financial transaction. Count Twenty–Six illustrates, however, that the principle advanced can properly be applied in the money laundering context. For instance, it alleges that "monetary instruments in the form of United States currency or coin or checks" were the subjects of financial transactions. Such an allegation can be a part of a proper money laundering count, and proof of any one of these means would suffice to support a conviction. *See Griffin v. United States*, ——— U.S. ———, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991); *UCO Oil Co.*, 546 F.2d at 838 ("*Once it is determined that the statute defines but a single offense*, it becomes proper to charge the different means, denounced disjunctively in the statute, conjunctively in each count of the indictment") (emphasis added).

1956(a)(1)(A)(i), it is difficult to see potential prejudice to a defendant's double jeopardy rights. If a general verdict of not guilty is rendered, it would be appropriate to bar reprosecution for either or both offenses. *See Sanabria,* 437 U.S. at 64, 98 S.Ct. at 2178 ("In deciding whether a second trial is permissible here, we must immediately confront the fact that petitioner was acquitted on the indictment."); *Griffin,* —— U.S. ——, 112 S.Ct. 466 (if a properly instructed jury convicts upon a legally sufficient multiple-object conspiracy count, but one object is unsupported in the evidence, a court must presume that the jury convicted on the object that was supported by the evidence).

■ The Government's course-of-conduct charge, however, does not allege specific acts of money laundering. The Government's attempt to show the double jeopardy benefits of its course-of-conduct charge shows the uncertain scope of the double jeopardy implications of the charge. The Government argues, "Should the defendant be found not guilty, he can never be retried for any money laundering event at the institution in question, *or arguably involving the accounts in question,* for the entire two year period of 1988 and 1989." Second Omnibus Brief, at 13 (emphasis added). That the offense charged was not defined by Congress can only compound the problem. As *Sanabria* demonstrates, the allowable unit of prosecution can be of critical importance to a defendant's double jeopardy rights. *See also United States v. Felix,* —— U.S. ——, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992); *McIntyre v. Trickey,* 975 F.2d 437 (8th Cir.1992), *petition for cert. filed,* 61 U.S.L.W. 3653 (1993).

Although the Government may be right in its assessment of the double jeopardy effects of its charge, the Court, before creation of a trial record and without the benefit of a statutorily defined offense, is unwilling to rely on the Government's assessment. Neither this Court nor the prosecution can control the double jeopardy effect of a trial in this case on a subsequent prosecution. The chance that the Government's assessment is wrong is sufficient prejudice for purposes of a pretrial challenge to an improper count.

■ A general verdict of guilty on the government's course-of-conduct charge can be prejudicial in sentencing and obtaining appellate review because it would not reveal the one or more financial transactions for which the jury convicted. Under the government's theory of alternative means to commit one offense, the jury's finding one financial transaction would support the verdict. On disputed facts, the jury could acquit on some but not all financial transactions.

■ Yet, because a general verdict does not reveal the ground of conviction, the government would be free to argue, by asserting that the evidence was sufficient, that the jury convicted on financial transactions when in fact the jury acquitted on them. This advantage to the government and disadvantage to the Defendants is significant. Necessarily, a court's standard of review of a jury verdict is limited. As the Third Circuit has stated:

> On direct appeal from a criminal conviction, we apply a standard of review to sufficiency of evidence claims that is quite deferential. *See, e.g., United States v. Messerlian,* 832 F.2d 778, 796 (3d Cir. 1987), *petition for cert. denied,* 485 U.S. 988, 108 S.Ct. 1291, 99 L.Ed.2d 501 (1988) (No. 87–1191, filed Jan. 14, 1988); *United States v. Martorano,* 709 F.2d 863, 866–67 (3d Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983). "It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). In the course of conducting this inquiry, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (original emphasis). Thus, when we are faced "with a record of historical facts that supports conflicting inferences, [we] must presume—even if it does not affirmatively appear in the record—that the trier

of fact resolved any such conflicts in favor of the prosecution, and [we] must defer to that resolution." *Id.* at 326, 99 S.Ct. at 2793.

*United States v. Aguilar,* 843 F.2d 155, 156–57 (3d Cir.1988). Where more than one offense is charged in a single count, this standard of review is inadequate to protect a defendant's right to have the charges against him determined by a jury.

In this case, the Government could support a higher sentence with minimally sufficient evidence that was in fact rejected by the jury, the Government having the benefit of a deferential standard of review, all inferences in its favor and the credibility of its evidence being established as a matter of law. As to each financial transaction, the Defendants would lose all of this, and the benefit of the jury's " 'technical right, if it can be called so, to decide against the law and the facts....' " *United States v. Desmond,* 670 F.2d 414, 416 (3d Cir.1982) (quoting *Horning v. District of Columbia,* 254 U.S. 135, 41 S.Ct. 53, 65 L.Ed. 185 (1920)).

Prejudice in sentencing arises because under Section 1956(a) the statutory fine of up to twice the amount of "the transaction" is directly measured against the offense of conviction. Under the Government's theory, such a fine could be imposed for each transaction supported by the evidence, which could be reviewed only with great deference, irrespective of the jury's actual finding on each transaction.

The Government contends that for sentencing purposes under the guidelines, the relevant conduct guideline, U.S.S.G. § 1B1.3(a)(2), would permit the aggregation of the amounts of all financial transactions that are subject to its course-of-conduct charge upon conviction for one transaction in a one transaction count. Although the Government may ultimately be proved right in this regard, the Court need not decide this issue at this time to find prejudice. The Government's course-of-conduct charge is prejudicial in that it removes this issue from the case. If the course-of-conduct charge is

the offense of conviction, aggregation would be governed by Section 1B1.3(a)(1), and the record would not implicate Section 1B1.3(a)(2). Therefore, a challenge to the Government's relevant conduct assertion on any ground, meritorious or not, would be foreclosed.

■ Although potential evidentiary prejudice is not as clear cut here as in the case of a conspiracy, such potential prejudice nonetheless exists. Under the course-of-conduct charge, evidence of each and every financial transaction is *directly* relevant to the offense charged. Were only one financial transaction charged, the admissibility of evidence of other like financial transactions would be limited and only *indirectly* relevant. *See* Fed. R.Evid. 404(b). Were all financial transactions charged in single counts, all the evidence would go in, but its relevance, and the Court's evidentiary rulings and instructions would be clearer to the jury.

■ Finally, a general verdict of guilty would not reveal whether the jury was unanimous in finding a particular financial transaction was the basis of conviction. Likewise, the risk that the jury will render a verdict that is not in fact unanimous as to the transaction or transactions of conviction increases with the number of transactions alleged in a single count. Although the fact of the indictment does not reveal the number of financial transactions within the course of conduct, it does reveal that the course of conduct is alleged to have extended over several years.[8]

Each of the vices of duplicity, therefore, are present in the Government's course-of-conduct charge.

■ The Government's course-of-conduct charge also fails to give adequate notice to allow sufficient preparation for trial. In the instance of Rusin and Count Twenty–Six, to mount a challenge at trial to a particular element of the offense as to any particular transaction, Rusin would have to prepare the challenge as to each particular transaction because County Twenty–Six gives no notice

---

**8.** The Government asserts that Rusin engaged in approximately two transactions per week over two years, that is, approximately 208 separate financial transactions. Second Omnibus Response, at 13.

of the particular offense on which the government will offer evidence.[9]

To the extent that the Government was seeking to prosecute "a large number of violations over a long period of time" in an efficient manner, *Castellano*, 610 F.2d at 1408, the Court notes that the Government has charged all defendants with conspiracy and running an illegal gambling business— both offenses being continuous offenses. To the extent that the Government was seeking to mitigate the potentially draconian results of a trial and convictions on a plethora of money laundering counts, the Court notes that the Government retains substantial discretion in deciding on the nature and number of charges to bring on offenses defined by Congress. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978).[10]

The Government's course-of-conduct charge has sufficient potential prejudice to justify granting the instant motion and the motions to join therein.

### C. The Remedy

■ Generally, the appropriate remedy for a duplicitous count is to force the Government to elect to proceed on only one of the charges contained in the count. *See, e.g., United States v. Aguilar*, 756 F.2d 1418 (9th Cir.1985); *Kearney*, 444 F.Supp. at 1295. Because of the form of the Government's course-of-conduct charge, the Court finds this remedy inadequate to protect the Defendants' right to be tried only on an indictment handed down by a grand jury.

In *United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985), the Court reversed the Ninth Circuit, which had held that a defendant's right to be indicted by a grand jury was violated when he was

convicted of a substantially narrower, but fully included, mail-fraud scheme than the one for which the grand jury indicted him. The single scheme was set forth in three counts, and the government moved to dismiss one count, which was dismissed.

■ The Supreme Court, reiterating that an indictment may set forth several means of committing an offense and a conviction can be based upon any single means, held that the deletion of the one count did not unconstitutionally broaden the indictment.[11] The Court rejected *Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887) to the extent that *Bain* stood for the proposition that "it constitutes an unconstitutional amendment to drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within it. . . ." *Miller*, 471 U.S. at 144, 105 S.Ct. at 1819. The Court distinguished, rather than rejected, *Bain* to the extent that *Bain* stood for the proposition that "a conviction cannot stand if based on an offense that is different from that alleged in the grand jury's indictment." *Id.* at 142, 105 S.Ct. at 1818. The distinction in *Miller* was that the offense of conviction was fully and clearly set out by the grand jury in the indictment.

The Government's course-of-conduct charge is not duplicitous in the sense of fully and clearly setting forth more than one offense. It charges a single course-of-conduct offense. The Court, therefore, cannot strike language from charges to narrow them.

The Government's course-of-conduct charge would not be broadened by election; the Government could choose to try the case on a specific transaction that falls within the broad parameters of the charge. Such an amendment of the indictment, however, does

---

**9.** The Court is not aware of any federal statute that specifies as many as 208 various means of committing a violation.

**10.** The *Bordenkircher* Court stated:

> In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.

*Bordenkircher*, 434 U.S. at 364, 98 S.Ct. at 668; *see also United States v. Goodwin*, 457 U.S. 368, 380 n. 11, 102 S.Ct. 2485, 2492 n. 11, 73 L.Ed.2d 74 (1982).

**11.** In contrast to the Government's improper course-of-conduct money laundering charge, a mail fraud "scheme" is properly charged as a continuous offense. *See, e.g., United States v. Maker*, 751 F.2d 614, 624–27 (3d Cir.1984), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985).

more than delete all transactions but one. It adds an allegation of one specific financial transaction—the defining element of Section 1956(a)(1)(A)(i) money laundering.

The course-of-conduct count does not specify any single financial transaction that was presented to the grand jury. Even assuming that the financial transaction elected was presented to the grand jury, the grand jury's indicting on a course-of-conduct charge does not necessarily mean that the grand jury found probable cause as to the elected transaction. Such a finding is the exclusive domain of the grand jury. It is not for the Court or the prosecutor to speculate as to which transaction or transactions the grand jury indicted when the indictment does not specify it or them. A bill of particulars specifying one transaction, therefore, would constitute an improper amendment of the indictment. *Cf. Kearney,* 444 F.Supp. at 1295–96.

More fundamentally, the Government presented to the grand jury, and the grand jury indicted on, a course-of-conduct theory and charge. That theory, not being an offense defined by Congress, does not constitute the same offense as the offense defined by Congress—an offense comprising only one financial transaction. Election would fundamentally alter the offense charged by the grand jury.

Defendant William E. Rusin's Motion to Quash Count Twenty–Six of Indictment for Violation of Rule 8(a), Fed.R.Crim.P. (Document No. 364), and the motions to join therein, will be granted. As jeopardy has not yet attached to the Counts in question and the Court's ruling is not based upon any factual determinations, the Court will dismiss without prejudice.

## ORDER OF COURT

AND NOW this 17th day of June, 1993, it is ORDERED as follows:

(1) The motion to join in Defendant William E. Rusin's Motion to Quash Count Twenty Six of the Indictment for Violation of Rule 8(a) Fed.R.Crim.P. (Document No. 364) of Mark A. Abbott (Document No. 429, in part) is DENIED AS MOOT;

(2) The motions to join in Defendant William E. Rusin's Motion to Quash County Twenty Six of the Indictment for Violation of Rule 8(a) Fed.R.Crim.P. (Document No. 364) of Defendants John F. "Duffy" Conley (Document No. 421, in part) and Frank Garofalo (Document No. 412, in part) are GRANTED; [12]

(3) IT IS FURTHER ORDERED that the above referenced motions to join remain pending to the extent that this Order does not expressly rule upon them.

(4) Defendant William E. Rusin's Motion to Quash Count Twenty Six of the Indictment for Violation of Rule 8(a) Fed. R.Crim.P. (Document No. 364) is GRANTED as follows:

(a) Counts Thirteen, Fourteen, Sixteen, Seventeen, Twenty–Three, Twenty–Five, Twenty–Six, Twenty–Seven and Twenty–Eight are DISMISSED WITHOUT PREJUDICE;

(b) All allegations against Defendant John F. "Duffy" Conley in Counts Eighteen, Twenty–Two, Twenty–Four and Twenty–Nine are STRICKEN WITHOUT PREJUDICE;

(c) All allegations against Defendants Frank Garofalo and Michael Sukaly in Count Twenty–One are STRICKEN WITHOUT PREJUDICE.

---

**12.** Defendant Michael Sukaly's motion to join in Defendant William E. Rusin's Motion to Quash Count Twenty Six of the Indictment for Violation of Rule 8(a) Fed.R.Crim.P. (Document Nos. 644 & 647) was previously granted (Document No. w/647).