UNITED STATES of America

v.

Christopher GRAY.

No. 1:00–CR–17.

United States District Court,
E.D. Tennessee.

June 8, 2000.

Frank Perry, Frank B. Perry & Associates, Ringgold, GA, for defendant.

Gary S Humble, US Department of Justice, Office of US Attorney, Chattanooga, TN, for plaintiff.

## MEMORANDUM

COLLIER, District Judge.

Before the Court are Defendant's oral Motion to Dismiss Count Six of the Superseding Indictment and the Government's Brief in Support of the Sufficiency of the Money Laundering Allegations in Count Six of the Indictment (Court File No. 36). For the following reasons, the Court will GRANT Defendant's Motion and DISMISS Count Six of the Superseding Indictment.

## I. RELEVANT FACTS

On February 23, 2000, the Grand Jury for the Eastern District of Tennessee returned a 39 count indictment charging Defendants Brenda Kay Gray, Christopher Gray, and Shannon Bearden a.k.a. Shannon Bolden with various forgery and money laundering offenses (Court File No. 1). In essence, the indictment charged that defendant Brenda Kay Gray used her position as an employee of an accounting firm to forge checks and embezzle money, and then wrote checks to her son, Defendant Christopher Gray, and/or her then daughter-in-law, Defendant Shannon Bearden. The indictment charged that Defendants Christopher Gray and/or Shannon Bearden aided and abetted this scheme to defraud and/or used the stolen proceeds with knowledge they were unlawfully obtained.

On March 29, 2000, the Grand Jury returned a six count superseding indictment charging the same offenses, but in a more condensed form (Court File No. 21). The superseding indictment also included forfeiture allegations. In the superseding indictment, Defendant Christopher Gray was charged in Count Two with aiding and abetting interstate transportation of falsely made or forged securities, in Count Five with conspiracy to commit money laundering, and in Count Six with aiding and abetting money laundering.

Defendant Christopher Gray proceeded to trial on these counts on April 10, 2000.[1] At the conclusion of all the evidence but before the jury received the case, the Court held a charge conference to discuss the Court's proposed instructions to the jury and to address any objections thereto. At the beginning of the charge conference the Court raised some concerns about Count Six of the superseding indictment charging Defendant Christopher Gray with aiding and abetting money laundering. The Court noted Count Six did not allege any particular financial transaction to form the basis of the money laundering charge, but instead charged Defendant with aiding and abetting several unspecified financial transactions. During the course of the discussion concerning Count Six Defen-

---

1. Defendant's mother, Brenda Kay Gray, and his former wife, Defendant Shannon Bearden, pleaded guilty to the charges against them and testified at Defendant Christopher Gray's trial.

dant orally moved the Court to dismiss the count. After hearing arguments on the motion from both sides, the Court took the motion under advisement and solicited briefs from the parties on the subject.[2] The Court allowed the jury to consider Count Six, but submitted a special interrogatory requiring the jury, if it found Defendant guilty of Count Six, to specify which financial transaction formed the basis of the guilty verdict.[3]

The jury returned a guilty verdict on all counts. As to Count Six, the jury found the specific financial transaction to be "the check # 1210 on Don Stewart of 9000.00." The government has submitted a brief in support of the sufficiency of the money laundering allegations in Count Six. Defendant did not submit a brief on the subject to the Court.

## II. *DISCUSSION*

Count Six of the Superseding Indictment reads as follows:

The Grand Jury further charges that beginning on or about March 25, 1998, and continuing until on or about January 19, 1999, in the Eastern District of Tennessee, the defendant, BRENDA KAY GRAY, aided, abetted, counseled and induced by defendant CHRISTOPHER GRAY and others to the Grand Jury known and unknown, did knowingly conduct and attempt to conduct *financial transactions*, which affected interstate commerce, and which involved the proceeds of a specified unlawful activity, that is, defendant BRENDA GRAY did

write checks made payable to "CSG" and "S. Bearden" and drawn on accounts controlled by Chitwood and Chitwood pursuant to the fraud described in counts one and two of this Indictment, the allegations of which are realleged and incorporated by reference herein, and deposit the checks in an account in the name of "Shannon C. Gray," knowing that the *transactions* were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct those *financial transactions*, the defendants BRENDA KAY GRAY and CHRISTOPHER GRAY, knew that the property involved in those *financial transactions*, that is, the funds and monetary instruments in the approximate amount of $113,000, represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(emphasis added).

Count Six alleges a violation of 18 U.S.C. § 1956(a)(1)(B)(i). This section states:

(a)(1) Whoever, knowing that the property involved in a *financial transaction* represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a *financial transaction* which in fact involves the proceeds of specified unlawful activity—

. . .

---

2. The Court notes the original 39 count indictment alleged each separate financial transaction as a separate money laundering count. However the superseding indictment alleged the same statutory violations, but did so in six counts and deleted all reference to any specific financial transactions.

3. By allowing the jury to reach a decision on the disputed charge, the Government's ability to appeal the Court's decision was preserved. Once the jury was empaneled and jeopardy attached, the Government could not have appealed the Court's decision under 18 U.S.C. § 3731 which provides:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict of judgment, as to any one or more counts, *except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.* (emphasis added); *see also United States v. Oakar,* 111 F.3d 146, 149–50 (D.C.Cir.1997); *United States v. Alberti,* 568 F.2d 617, 621 (2d Cir.1977).

(B) knowing that the *transaction* is designed in whole or in part—

(i) to conceal or disguise the nature, the location, the source, the owner-ship, or the control of the proceeds of a specified unlawful activity . . .

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the *transaction*, whichever is greater, or imprisonment for not more than 20 years, or both. (emphasis added). As the statute clearly, repeatedly, and consistently states, it is the conducting of a *"financial transaction"* which is made criminal. Count Six, however, repeatedly and consistently refers to *"financial transactions."* Clearly, Count Six is not limited to a single financial transaction and does not track the statutory language. It alleges multiple unspecified financial transactions. This deviation from the statutory language raises the question of whether Count Six is defective, whether it alleges a criminal offense, and whether the Defendant's conviction on this Count can stand constitutionally.

Whether Count Six is defective because it is duplicitous, or whether the count fails to allege an offense appear at first glance to be related and similar questions. However in actuality, these potential problems are quite distinct and call for different remedies. *See United States v. Adesida,* 129 F.3d 846, 850 n. 1 (6th Cir.1997) ("We note that there is a distinction between an indictment that is duplicitous and charges two offenses and an indictment that charges a non-offense"). The Court will therefore analyze each question separately.

### A. Is Count Six Duplicitous?

▆▆▆ Duplicity is defined as "the joining of two or more offenses in one count."

*United States v. Abson,* No. 99–40047–01–SAC, 2000 WL 341021, at \*1 (D.Kan. Feb.3, 2000) (quoting *United States v. McKneely,* 69 F.3d 1067, 1072 (10th Cir. 1995)); *see also United States v. Robinson,* 651 F.2d 1188, 1194 (6th Cir.1981). On the surface, it would appear Count Six is duplicitous. Duplicitous charges run afoul of *Fed.R.Crim.P.* 7 and 8[4] and are defective. The Federal Rules of Criminal Procedure condemn combining multiple charges in one count for several reasons: (1) The jury in a general verdict cannot make a finding on each offense; (2) A defendant may not have proper notice of the charges against him; (3) It may be difficult if not impossible to make correct evidentiary rulings; (4) A jury may convict a defendant without unanimously agreeing on the same offense; (5) A defendant may be prejudiced in a subsequent double jeopardy defense; (6) A defendant may be prejudiced at sentencing; and (7) A defendant may face limited review on appeal. *United States v. Duncan,* 850 F.2d 1104, 1108 (6th Cir.1988); *United States v. Trammell,* 133 F.3d 1343, 1354 (10th Cir.1998) (quoting *United States v. Wiles,* 102 F.3d 1043, 1061 (10th Cir.1996), *cert. denied,* 522 U.S. 945, 118 S.Ct. 361, 139 L.Ed.2d 282 (1997)). Duplicitous charges also implicate the Sixth Amendment. *United States v. Shumpert Hood,* 210 F.3d 660, 662 (6th Cir.2000).

▆▆▆ In the typical duplicitous case, a count contains two or more specific identifiable crimes. *See, e.g. Adesida,* 129 F.3d at 849 (count of indictment charging defendant with both conspiracy to import and attempt to import heroin was duplicitous, in that attempt and conspiracy required different proof and were two separate offenses). Under *Fed.R.Crim.P.* 12(b)(2), objections to duplicitous counts must be raised before trial or they are waived.[5]

---

**4.** "Two or more offenses may be charged in the same indictment or information in a separate count for each offense . . ." *Fed.R.Crim.P.* 8(a). "The indictment or information shall be a plain, concise and definite written statement of *the essential facts* constituting *the*

offense charged." *Fed.R.Crim.P.* 7(c)(1)(emphasis added).

**5.** Rule 12(b) provides in pertinent part, "The following [objections] must be raised prior to

When the issue is raised before trial, to avoid the problems created by duplicity, "courts will either dismiss the duplicitous counts of an indictment, or require the government to make an election between charging one, but not all of the offenses." *United States v. Sourlis*, 953 F.Supp. 568, 572 (D.N.J.1996). "Generally, the appropriate remedy for a duplicitous count is to force the Government to elect to proceed on only one of the charges contained in the count." *United States v. Conley*, 826 F.Supp. 1536, 1547 (W.D.Pa.1993) (citations omitted); *see also Shumpert Hood*, 210 F.3d 660, 662; *United States v. Brown*, 188 F.3d 519 (Table), 1999 WL 569052, at *3 (10th Cir. Aug.4, 1999); *United States v. Henry*, 504 F.2d 1335, 1338 (10th Cir.1974), *cert. denied*, 421 U.S. 932, 95 S.Ct. 1660, 44 L.Ed.2d 90 (1975).

■■■ A court may also "'particulariz[e] the distinct offense charged in each count' in its jury instruction." *Shumpert Hood*, 210 F.3d 660, 662 (quoting *Robinson*, 651 F.2d at 1194). Although the Court gave a special heightened unanimity instruction in this case, such instructions generally are not required unless: "(1) a count is extremely complex; (2) there is variance between the indictment and the proof at trial; or (3) there is a tangible risk of jury confusion." *Shumpert Hood*, 210 F.3d 660, 662 (quoting *United States v. Sanderson*, 966 F.2d 184, 187 (6th Cir. 1992)).

■ In this case the issue is whether charging unspecified multiple financial transactions in a single money laundering count renders the count duplicitous. While there is some case law in support of this proposition, the authority is tenuous. In *United States v. Prescott*, 42 F.3d 1165 (8th Cir.1994), the defendant was convicted on a money laundering charge containing language much like that set forth in Count

Six. On appeal the defendant argued the count of which she was convicted referred to financial transactions in the plural, with the only limitation being that the transactions occurred between 1989 and 1992. She argued while section 1956(a)(1)(B)(i) prohibits individual acts of money laundering, the government charged her with a course of conduct offense which Congress did not make criminal in the money laundering statute. The Government conceded the correctness of the defendant's argument but countered that the defective count alleged multiple transactions and was therefore duplicitous, a defect the defendant could not object to for the first time on appeal. Without analysis and without focusing on the distinction between duplicity and failure to allege an offense, the United States Court of Appeals for the Eighth Circuit considered the issue to be one of duplicity and held pursuant to Rule 12(b)(2) the defendant had waived her right to challenge the count by not raising the matter before trial. *Id.* at 1167.

The conclusion reached in *Prescott* might be acceptable had the count in this case specified the multiple financial transactions involved. If, for example, the count had specified ten particular financial transactions, any one of which would have supported the money laundering charge, the count would be duplicitous, and the Court could have remedied the situation by either requiring the government to choose a particular transaction or giving the jury a unanimity instruction. Since the count in this case did not specify the multiple transactions, but instead alleged a general course of conduct, the Court does not find *Prescott* persuasive. Accordingly, because Count Six did not list the specific multiple financial transactions included within Count Six[6], the Court concludes Count Six is not duplicitous.

---

trial ... Defenses and objections based on defects in the indictment or information."

6. While Count Six itself does not specify any particular financial transaction, it does refer

back to Counts One and Two of the superseding indictment and realleges and incorporates by reference the allegations contained in those two counts. Count One alleged a scheme to defraud and the interstate trans-

## B. Does Count Six Allege A Crime?

 Since the Court has concluded Count Six is not defective for duplicity, the Court must now decide whether it alleges an offense. Failure to object prior to trial is not fatal to such an argument because it is axiomatic a person cannot be found guilty of a crime which does not exist. · *See Adesida*, 129 F.3d at 850 ("If an indictment does not charge a cognizable federal offense, then a federal court lacks jurisdiction to try a defendant for violation of the offense"). The issue here is whether Congress, when it crafted the money laundering statute, made criminal (1) specific money laundering financial transactions and/or (2) general money laundering courses of conduct. This is more than a procedural matter but is also a substantive inquiry with constitutional implications.

 After reviewing the terms of the money laundering statute, 18 U.S.C. § 1956, and the case law, the Court concludes the money laundering offenses are limited to specific financial transactions and do not include courses of conduct. Nothing in the statutory · language. supports a conclusion the statute contemplated the prosecution of multiple financial transactions in one general charge. In addition to the language of the statute itself, substantial case law supports the Court's conclusion. While the United States Court of Appeals for the Sixth Circuit has never analyzed whether section 1956 encompasses single financial transactions rather than multiple financial transactions or a course of conduct, with one exception, courts from other jurisdictions that have addressed this issue agree the statute contemplates prosecution for singular instances of financial transactions. ·

In *United States v. Martin*, 933 F.2d 609, 611 (8th Cir.1991), the United States Court of Appeals for the Eighth Circuit held:

> [I]t is the individual acts of money laundering which are prohibited under section 1956(a)(1)(B)(i), and not the course of action which those individual acts may · constitute. · ·

In an extensive discussion of the issue, District Judge Lee in *United States v. Conley*, 826 F.Supp. 1536, 1543–44 (W.D.Pa.1993), thoroughly analyzed the statute and concluded:

> The words of the statute are plain and unambiguous. Congress defined the offense and the allowable unit of prosecution. The allowable unit of prosecution under Section 1956(a) is each individual "financial transaction."

*See also Prescott*, 42 F.3d at 1166 (the Government conceded the statute only contemplated single financial transactions). Following Judge Lee's very thorough opinion, other courts have endorsed his reasoning and conclusion.

In *United States v. Kramer*, 73 F.3d 1067 (11th Cir.1996), the United States Court of Appeals for the Eleventh Circuit reversed a conviction where a count of an indictment alleged nonspecific multiple acts of money laundering. The defendant in *Kramer* was convicted of violating 18 U.S.C. § 1956(a)(2), which prohibits the transporting of funds from a place in the United States to or through a place outside the United States intending to conceal the source of the funds and knowing that the funds are the proceeds of unlawful activity. As in the case *sub judice*, the trial court used a special verdict form. The jury found that the defendant intended to further the laundering

portation of falsely made and forged securities. The transportation allegation of Count One alleges unspecified checks totaling $42,-500. The scheme detailed in the count only specifies one matter which conceivably is a financial transaction: subparagraph 5 of the Fraud allegation which makes reference to a $5,000 wire transfer from NationsBank in

Tulsa, Oklahoma by Defendant Brenda Kay Gray to "her daughter's AmSouth account in Chattanooga, Tennessee." This was not the financial transaction the jury found Christopher Gray conducted in Count Six. Count Two alleges $113,000 in unspecified falsely made and forged checks.

scheme by causing the transfer of $9.5 million from Switzerland to Luxembourg. However the jury also found that the defendant did not cause the transfer of this same money from the United States to Switzerland. Pertinent to this Court's analysis is the Eleventh Circuit's discussion of the Government's argument that the money laundering statute [7] allowed a course of conduct prosecution. In rejecting this argument the court stated:

[T]he statute does not make money laundering a continuing offense. The statutory language and legislative history indicate that each transaction or transfer of money constitutes a separate offense. *See* S.Rep. No. 433, 99th Cong.2d Sess. 12–13 (1986); *U.S. v. Conley*, 826 F.Supp. 1536, 1543–44 (W.D.Pa. 1993) (concluding that unit of prosecution is "each individual financial transaction"). The jury found that Gilbert was involved in only one transaction, and the transaction was totally outside of this country. Because this transaction is separate from the one originating in the United States and because money laundering is not a continuing offense, Gilbert's conviction cannot be upheld on this basis.

In the alternative, the government argues that Gilbert aided and abetted the transfer of funds from the United States by his participation in the European transaction. This argument also must fail in the light of the jury's special verdict. The jury was instructed that a defendant who aids and abets another person is responsible for the conduct of that other person just as though the

defendant engaged in the conduct himself. Thus, the jury would have indicated that Gilbert "committed" the transfer of funds from the United States had they found him to be either a principal or an aider in this transfer.

By its verdict, the jury found that Gilbert had not caused the transfer of funds from the United States to Switzerland either directly or as an aider and abetter. As such, the jury's special verdict does not support a conviction under section 1956. The conviction for money laundering must be reversed.

73 F.3d at 1072–73.

The Court has located only one reported case holding the money laundering statute contemplates a prosecution for multiple financial transactions or a course of conduct, *United States v. Gordon*, 990 F.Supp. 171 (E.D.N.Y.1998). In *Gordon* District Judge Spatt, faced with an argument similar to the one here and after considering the *Conley* decision, stated:

The Court finds that the acts alleged in the money laundering count constitute part of a single continuous scheme, and thus, this charge is not duplicitous. The acts attributed to Gordon are part of the same alleged design, that is, to use corporate funds to purchase, furnish and maintain the condominium located in Manhasset, New York, for his benefit without revealing to the IRS that he had control over the money. The acts are directed to this same goal and therefore, a part of a continuing scheme. *See* [*United States v. Aracri*, 968 F.2d 1512,

---

7. The Court acknowledges that § 1956 contains a number of subsections and some of these subsections do not include the language "financial transaction." However as the Eleventh Circuit in *Kramer* stated, this is not relevant to the determination of whether the unit of prosecution is a single financial transaction or a course of conduct.

Gilbert was convicted under 18 U.S.C. § 1956(a)(2). We recognize that *Conley*, *supra*, and Senate Report No. 433, *supra*, discuss different sections of the money laundering statute. We also know that sec-

tion (a)(2), unlike other portions of the statute, does not explicitly refer to "a financial transaction" as the crime. These points do not change our result. The statutory language, taken as a whole, manifests the intent by Congress to make each transaction or transfer a separate crime. *Cf. U.S. v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971) (requiring all ambiguity in criminal statute to be construed in favor of accused).

73 F.3d at 1073 n. 11.

1519 (2d Cir.1980) ] (count not duplicitous when acts charged were all committed for a single purpose).

*Id.* at 178. Important to Judge Spratt's decision was his understanding of the policy considerations involved.

Finally, the Court finds that the policy considerations underlying the doctrine of duplicity is not implicated in the present case. "By grouping several offenses in each count, this indictment serves not to expand defendant's exposure, but to limit it." *United States v. Agnese,* No. 85 Crim. 1198, 1986 WL 5108, at *2 (S.D.N.Y.1986). In addition, since Gordon has had ample access to the government's theory of the case, he cannot claim that he lacks notice of the charges against him, or that it will be difficult for him to ascertain the scope of double jeopardy protection. *Weissman,* 1996 WL 742844, at *26 (citing *United States v. Mott,* 603 F.Supp. 1322, 1325 (S.D.N.Y.1985)). The Court further finds that any problems that may be created by multiple transactions alleged in the count, if there are any, can be cured by appropriate instructions to the jury. [*United States v. Margiotta,* 646 F.2d, 729, 733 (2d Cir.1981) ]; *United States v. Helmsley,* 941 F.2d 71, 91 (2d Cir.1991), *cert. denied,* 502 U.S. 1091, 112 S.Ct. 1162, 117 L.Ed.2d 409 (1992); *United States v. DiMarzo,* 1993 WL 426936, at *2 (S.D.N.Y.1993); *Agnese,* 1986 WL 5108, at *2.

*Id.*

The Court does not find the reasoning in *Gordon* applicable or persuasive. First, the decision completely ignores the clear language of the money laundering statute and the clearly expressed intention of Congress [8]. Second, for obvious reasons, if the indictment does not allege a crime, then Defendant is not aided by grouping the transactions together in order to limit Defendant's exposure as the *Gordon* court suggests. Moreover, even if the Court presumed the indictment in this case alleged a crime, Defendant still receives no benefit from grouping the transactions together. In light of the multi-count grouping and relevant conduct provisions of the United States Sentencing Guidelines, and absent a motion for upward departure from the government, Defendant's punishment if convicted would be the same whether the indictment alleged ten separate money laundering offenses, with each count focusing on a different specific financial transaction, or whether all the offenses are included in one count. *See* U.S.S.G. §§ 1B1.3, 3D1.1–1.5.

The Court sees no reason to duplicate the exhaustive analysis of the legislative history and the precise terms of the statute already undertaken by the Eleventh Circuit and Judge Lee in *Conley.* The Court agrees with the well reasoned opinion of Judge Lee and concludes the unit of prosecution in money laundering cases is each individual financial transaction and not a money laundering course of conduct. Count Six did not allege an individual financial transaction so it failed to allege a crime.

This defect could not be cured by the Government electing an individual financial transaction or by the Court giving a limiting instruction, or by requiring a special verdict. What happened in this case highlights the vice of allowing unspecified mul-

---

**8.** See S.Rep. No. 433, 99th Cong., 2d Sess. 12 (1986):

It should be noted that each transaction involving "dirty money" is intended to be a separate offense. For example, a drug dealer who takes $1 million in cash from a drug sale and divides the money into smaller lots and deposits it in 10 different banks (or in 10 different branches of the same bank) on the same day has committed 10 distinct violations of the new statute. If he then withdraws some of the money and uses it to purchase a boat or condominium, he will have committed two more violations, one for the withdrawal and one for the purchase.

See also H.R.Rep. No. 746, 99th Cong., 2d Sess. 13 (1986); G. Richard Strafer, *Money Laundering: The Crime of the '90's,* 17 Am. Crim. L.Rev. 149, 199–200 (1989).

tiple financial transactions to be included in one count. The specific financial transaction which the jury found the defendant conducted in violation of the law, check number 1210 drawn on the Don Stewart Association account, is not listed anywhere in the indictment. The jury largely had unfettered discretion in deciding on which of the multiple transactions discussed at trial it would base its verdict. One has no way of knowing whether the Grand Jury intended this specific check to be included in Count Six. Obviously, the Defendant could not have predicted before the jury returned its verdict that the jury would focus on this specific check. In addition, the Government, too, had unlimited discretion to pick and choose from among the multiple financial transactions discussed during the trial on which transactions to focus its argument to the jury. The Court would encounter difficulty in making evidentiary rulings and instructing the jury without guidance from the indictment as to which transactions the Grand Jury found relevant.

Moreover, the defense evidently encountered some confusion as to which financial transactions the government contended formed the basis of the money laundering charge. For example, at least one of the checks entered into evidence was apparently used to purchase groceries. As a result, Defendant submitted a jury request asking the Court to instruct the jury that "undisguised money used for family needs does not constitute money laundering" (Defendant's Request to Charge 2).[9] From the submitted jury request, obviously Defendant felt a need to defend against these transactions and to demonstrate to the jury the checks written for groceries and other household needs were not illegal. However at the charge conference, the government conceded these transactions related to family needs were outside the scope of Count Six. Without knowledge of precisely which transactions the Govern-

ment believed supported the money laundering charge, the Defendant was forced to assume all of the transactions were pertinent and to prepare a defense as to each and every one. Had the Defendant received notice Count Six was limited to Check No. 1210, he could have focused his time and attention on that particular transaction and more effectively prepared his defense.

## III. CONCLUSION

The Court concludes Count Six of the Superseding Indictment is not duplicitous since it does not list specific, multiple transactions. However the Court finds Count Six alleges a course of conduct involving multiple financial transactions, an offense which 18 U.S.C. § 1956(a)(1)(B)(i) does not make criminal. Instead the money laundering statute repeatedly and consistently refers to a single financial transaction. Accordingly, the Court will **GRANT** Defendant's oral Motion to Dismiss and **DISMISS** Count Six of the Superseding Indictment.

An Order shall enter.

---

9. This requested charge was not originally filed with the Court but was handed to chambers staff and contained in the Court's personal file relating to this Defendant. The Court has itself filed the requested charge so as to make a more complete record.