UNITED STATES of America,
Plaintiff–Appellee,

v.

Benjamin Barry KRAMER,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael GILBERT, Benjamin Barry
Kramer, Defendants–Appellants.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Benjamin Barry KRAMER,
et al., Defendants,

Michael Gilbert, Karen Gilbert, Robert
Gilbert, Margaret Gilbert, the Michael
Gilbert Family Irrevocable Trust, and
the Robert Gilbert Family Irrevocable
Trust, Claimants–Appellants.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Benjamin Barry KRAMER, Michael
Gilbert, Defendants–Appellants.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Benjamin Barry KRAMER,
et al., Defendants,

Karen Gilbert, the Michael Gilbert
Family Irrevocable Trust,
Claimants–Appellants.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael S. GILBERT, Defendant–
Appellant.

Nos. 90–5055, 90–5360, 90–5431, 90–
5751, 91–5659 and 93–4951.

United States Court of Appeals,
Eleventh Circuit.

Jan. 16, 1996.

Kenneth J. Kukec, Miami, FL, for Benjamin Kramer in Nos. 90–5055, 90–5360 and 90–5751.

Bruce Rogow, Ft. Lauderdale, FL, for Michael Gilbert in Nos. 90–5055, 90–5431, 91–5659 & 93–4951.

Dexter W. Lehtinen, U.S. Atty., Robert J. Bondi, Alice Ann Burns, Linda Collins Hertz, Anne M. Hayes, Asst. U.S. Attys., Miami, FL, for U.S. in Nos. 90–5055, 90–5431, 90–5751, 90–5360 & 91–5659.

Michael S. Pasano, Miami, FL, for Michael Gilbert.

Steven E.M. Hartz, Miami, FL, for M. Dale Lyon & Lyon Children Trust in No. 90–5431.

Robert L. Shevin, Miami, FL, Stephen D. Miller, Los Angeles, CA, for David C. Pierson & Lois J. Pierson.

Richard H. Kirschner, Los Angeles, CA, A. Scott Miller, Miami, FL, for Julieann Coyne Wasson & Christopher Wasson.

William W. Taylor, Jr., Zuckerman, Spaeder, Goldstein, Taylor & Kulker, Washington, D.C., for Michael Gilbert, et al. in No. 90–5431.

Edward R. Shohat, Bierman, Shohat & Loewy, Miami, FL, for M. Dale Lyon & Lyon Children Trust in Nos. 90–5431 & 91–5659.

Marshall B. Grossman, Jonathan A. Loeb, Paul H. Rochmes, Alschuler, Grossman & Pines, Los Angeles, CA, for Karen Gilbert in Nos. 90–5431 & 91–5659.

Deborah J. Cantrell, Ross, Sacks & Glazier, Los Angeles, CA, for Michael S. Gilbert Family Irrevocable Trust in No. 90–5431.

Michael S. Pasano, Frederick W. Sall, Zuckerman, Spaeder, Taylor & Evans, Miami, FL, Deborah J. Cantrell, Ross, Sacks & Glazier, Los Angeles, CA, for Michael Gilbert Family Irrevocable Trust in No. 91–5659.

Michael S. Pasano, Humberto J. Pena, Zuckerman, Spaeder, Goldstein, Taylor & Kulker, Miami, FL, Bruce Rogow, Bruce S. Rogow, P.A., Beverly A. Pohl, Ft. Lauderdale, FL, for Michael Gilbert in No. 93–4951.

Kendall Coffey, U.S. Atty., Linda Collins Hertz, Alice Ann Burns, Anne M. Hayes, Robert J. Bondi, Asst. U.S. Attys., Miami, FL, for U.S. in No. 93–4951.

Before EDMONDSON and BARKETT, Circuit Judges, and DYER, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

Benjamin Kramer and Michael Gilbert appeal their convictions for RICO and Travel Act violations.[1] Gilbert also appeals convictions for money laundering and obstruction of justice and perjury—and a judgment of forfeiture. We reverse Gilbert's conviction for money laundering and the forfeiture judgment. In all other respects we affirm.

Between the years 1982 and 1987 Benjamin Kramer imported huge quantities of marijuana into the United States.[2] Sam Gilbert, a wealthy businessman in Los Angeles, was one of many who assisted Kramer in laundering the considerable amounts of cash generated by this operation. When Kramer would have cash delivered to California, Sam Gilbert would convert it to cashier's checks. Michael Gilbert (Sam Gilbert's son and business associate) obtained many of these cashier's checks from a local bank.[3] Cashier's checks were also obtained through the fictitious sale of precious metal coins. Michael Gilbert delivered cash in sealed boxes to the banker responsible for this "cash to coins" portion of the laundering scheme. These cashier's checks were then sent to a shell company in Liechtenstein. From there the money was transferred through other entities in other countries to further disguise the origin of the money.

Sam Gilbert formed a California entity ("CGL") to receive the money after it was "cleaned" by these transfers. CGL, purporting to be a legitimate mortgage broker, loaned $15 million to finance a casino, the Bell Gardens Bicycle Club ("BGBC"). Sam Gilbert's construction company, Sam Gilbert Associates ("SGA") built the casino. Michael Gilbert, president of SGA, supervised this construction. CGL also helped finance the Fort Apache Marina in Miami. Michael Gilbert, also an officer at CGL, supervised the construction of the Marina.[4]

Kramer decided to convert his assets to cash and demanded that the BGBC pay its mortgage. BGBC obtained a loan and paid CGL with a $9.5 million cashier's check. The $9.5 million was sent from California to Switzerland, where it remained until it was transferred to Luxembourg. Michael Gilbert signed a CGL board resolution authorizing the transfer of these funds from Switzerland to Luxembourg. Michael Gilbert maintained that he did not realize that his acts were furthering a criminal enterprise and that he was simply following the directions of his father, Sam. Sam Gilbert died before Michael's trial.

In a 1990 trial following his arrest, Michael Gilbert was convicted of three counts of violating the Travel Act, 18 U.S.C. § 1952, and one count of violating the RICO statute, 18 U.S.C. § 1962(d). He was acquitted on a RICO conspiracy count and acquitted on various other Travel Act counts. Later, the same jury also returned a forfeiture verdict against Gilbert's interest in the BGBC.

In 1993, in a separate proceeding, Michael Gilbert was tried and convicted of money laundering under 18 U.S.C. § 1956(a)(2)(B)(i), and of obstruction of justice and perjury based on his testimony in the 1990 trial.

## I. Sufficiency of the Evidence

Michael Gilbert argues that the evidence was insufficient to sustain his convictions on the Travel Act counts. A claim of insufficient evidence to sustain a conviction is reviewed *de novo*. *United States v. Mieres–Borges*, 919 F.2d 652, 656 (11th Cir.1990).

---

1. We have weighed the merits of Benjamin Kramer's Sixth Amendment claim and Fifth Amendment Double Jeopardy claim, and we affirm Kramer's convictions.

2. The Kramer organization imported an estimated 500,000 pounds of marijuana into the United States, resulting in a profit to Kramer of $60 million.

3. Michael Gilbert also signed checks paying Kramer a fictitious salary for "consulting" work and deposited cash into a special company account allegedly established to distribute drug proceeds.

4. The end result of these transfers and construction projects was that tracing the drug proceeds directly was prevented by the deposit of the cashiers' checks in foreign banks. And, tracing from the construction projects to their source of financing would reveal only that CGL had received a "loan" from a foreign entity protected by bank secrecy laws.

■ A conviction under the Travel Act requires the jury to find that the defendant traveled in interstate commerce with the intent to promote unlawful activity and thereafter actually did promote or attempt to promote the unlawful activity. *See* 18 U.S.C. § 1952(a)(3). Gilbert's convictions were based on three trips between California and Miami in 1985 which were alleged to have been in furtherance of the money laundering scheme.

■ Gilbert first argues that no reasonable juror could find that it was he who traveled between California and Miami on the dates in question. The government presented the jury with receipts from travel agencies, credit cards, and airlines—all bearing Michael Gilbert's name and all placing him in Miami on the dates in question. Gilbert, who lived in California, testified that he traveled to Miami to supervise the construction of the Fort Apache Marina. Gilbert also testified that the Marina was under construction on the dates he was alleged to have traveled to Miami. As such, it was reasonable for the jury to conclude that it was Gilbert who traveled to Miami.

For the jury to conclude that Gilbert's travels in fact promoted the illegal scheme was also reasonable. The jury properly concluded that Gilbert's travels were to supervise the construction of the Marina. And, the Marina project was financed with Kram-er drug money funnelled through CGL.[5] Thus, the jury properly concluded Gilbert's travel to construct the Marina in fact assisted the money laundering operation.

Gilbert also argues the government did not prove that he traveled with the intent to promote the illegal scheme. At the outset, we point out that intent and knowledge are nearly always proved by circumstantial evidence. Because the Travel Act convictions must be based on proof of guilty knowledge during specific travels, we will briefly explain why the jury was entitled to conclude that Gilbert knew his travels furthered the unlawful enterprise.

■ First, Special Agent Roger Edwards explained to the jury how CGL was established for the unlawful purpose of laundering drug money. Second, the jury was entitled to infer that Gilbert knew the illegal source of CGL's money.[6] Third, Gilbert told the jury that he knew CGL helped finance the Marina. Fourth, the jury was entitled to believe that Gilbert traveled to Miami on the dates alleged to supervise the construction of the Marina. Thus, that the jury was entitled to conclude that Gilbert knew that his trips to Miami were to help disguise Kramer drug proceeds through the construction of the Marina is clear. This amount of evidence is sufficient to sustain Gilbert's convictions.[7]

In addition, I note that Gilbert took the stand and offered an explanation for all his

---

**5.** IRS Special Agent Roger Edwards explained to the jury how Kramer drug money would eventually return to the United States in the form of a "loan" to CGL. As for CGL's financial stake in the Marina project, Edwards told the jury that CGL "funded the initial construction costs of Fort Apache Marina in Miami;" and Gilbert said that he knew CGL financed the project.

**6.** First, extensive proof exists of Gilbert's involvement in the overall money laundering scheme. For example, he delivered boxes of cash; his signature appears on wire transfers; he admits authorizing the transfer of drug money through Europe; and he obtained cashiers' checks from local banks. Even he admits in his briefs that he "assisted his father and the Kramers in acts of money laundering." From this extensive involvement, the jury was entitled to believe that Gilbert knew CGL's role in the enterprise.

Second, extensive proof was presented of Gilbert's management role in CGL. For example, Gilbert was vice president of CGL; he attended CGL board meetings; he signed CGL board resolutions; and his travel expenses were billed to CGL. Thus, the jury was entitled, at a minimum, to infer that Gilbert knew the source of CGL's money.

**7.** Gilbert attempts to support his evidentiary and *Allen* charge, *infra*, claims by noting that nearly identical evidence was offered on all ten Travel Act counts and that the jury convicted him on only three. But, inconsistent verdicts do not open a conviction on a particular count to attack. As Justice Holmes wrote in *Dunn v. U.S.*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932), "[t]he most that can be said in such cases is that the verdict shows that either in the acquittal or in the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." *See also*, *U.S. v. Powell*, 469 U.S. 57, 69, 105 S.Ct. 471, 479, 83 L.Ed.2d 461 (1984) (reaffirming *Dunn*).

misdeeds—he told the jury he was the unknowing dupe of his father. The jury could have chosen to believe Gilbert and entered a verdict of acquittal. But, the jury was also entitled to disbelieve Gilbert's testimony and to consider it substantive evidence of guilt, especially on the question of his intent. *See United States v. Brown,* 53 F.3d 312, 314–15 (11th Cir.1995).

## II. *Allen* Charge

■ After seven days of deliberation, the jury notified the court that it was unable to reach a unanimous verdict on Michael Gilbert. In response, the court issued a modified pattern *Allen* charge.[8] The charge encouraged jurors to reach a unanimous verdict, but also instructed jurors not to give up honestly held beliefs and to return a not guilty verdict if the evidence did not show guilt beyond a reasonable doubt. The next day the jury returned its guilty verdict. In reviewing the propriety of an *Allen* charge, we consider its coercive impact. *U.S. v. Elkins,* 885 F.2d 775, 783 (11th Cir.1989).

■ While we recognize concerns that an *Allen* charge might unduly coerce a juror into agreement in a close case, *see U.S. v. Rey,* 811 F.2d 1453, 1460 (11th Cir.1987), the charge given in this case does not differ materially from the instructions which we have approved in the past. Therefore, we do not see this charge to be too coercive.[9]

## III. Money Laundering Statute

Michael Gilbert was also convicted of violating 18 U.S.C. § 1956(a)(2), which prohibits the transporting of funds from a place in the United States to or through a place outside the United States intending to conceal the source of the funds and knowing that the funds are the proceeds of unlawful activity.

The jury, as shown on the special verdict form used,[10] found that Gilbert intended to further the laundering scheme by causing the transfer of $9.5 million from Switzerland to Luxembourg. The jury, however, also found that Gilbert did not cause the transfer of this same money from the United States to Switzerland. Gilbert argues that these findings do not support a conviction under the money laundering statute because the statute does not criminalize transfers which are not to or from the United States. *See* 18 U.S.C. § 1956(a)(2)(B)(i).

The United States makes two arguments which attempt to reconcile the jury's special verdict with the statutory requirements. First, it argues that the statute is satisfied because Gilbert's acts in Europe were part of a continuing transaction which originated in the United States.

■ But, the statute does not make money laundering a continuing offense. The statutory language and legislative history indicate that each transaction or transfer of money constitutes a separate offense. *See* S.Rep. No. 433, 99th Cong.2d Sess. 12–13 (1986); *U.S. v. Conley,* 826 F.Supp. 1536, 1543–44 (W.D.Pa.1993) (concluding that unit of prosecution is "each individual financial transaction").

■ The jury found that Gilbert was involved in only one transaction, and the transaction was totally outside of this country. Because this transaction is separate from the one originating in the United States and

---

**8.** *See Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

**9.** Gilbert also argues that the district court abused its discretion in allowing the government to recall Teresa Hurd, the bookkeeper and vice-president of SGA, and in allowing Hurd to testify about newly subpoenaed documents. The district court's decision to allow rebuttal testimony is reviewed for abuse of discretion. *U.S. v. Hawkins,* 905 F.2d 1489, 1496 (11th Cir.1990).

Gilbert claims prejudice because the testimony was allowed and because he was not immediately allowed to see the documents. But, the gov-

ernment responds that prejudice only results if the defendant is not allowed any opportunity to controvert newly introduced evidence. *U.S. v. Bulman,* 667 F.2d 1374, 1382 n. 12 (11th Cir. 1982). Here, Gilbert was allowed to see the documents before Hurd testified; and Gilbert was given the opportunity to cross-examine Hurd. Under the circumstances, there was no abuse of discretion.

**10.** Because the verdict form is so central to our discussion of the section 1956 prosecution, the verdict form and the corresponding count of the indictment have been attached to this opinion as an appendix.

because money laundering is not a continuing offense, Gilbert's conviction cannot be upheld on this basis.[11]

▮ In the alternative, the government argues that Gilbert aided and abetted the transfer of funds from the United States by his participation in the European transaction. This argument also must fail in the light of the jury's special verdict. The jury was instructed that a defendant who aids and abets another person is responsible for the conduct of that other person just as though the defendant engaged in the conduct himself. Thus, the jury would have indicated that Gilbert "committed" the transfer of funds from the United States had they found him to be either a principal or an aider in this transfer.

By its verdict, the jury found that Gilbert had not caused the transfer of funds from the United States to Switzerland either directly or as an aider and abetter. As such, the jury's special verdict does not support a conviction under section 1956. The conviction for money laundering must be reversed.

## IV. Obstruction of Justice and Perjury Convictions

In his testimony in 1990, Gilbert—as part of his theory of defense that he lacked criminal intent—denied knowing that boxes he delivered contained cash and denied authorizing a wire transfer of $15,000 to Miami. Based on these denials, Gilbert was convicted of perjury and obstruction of justice in the 1993 trial. *See,* 18 U.S.C. §§ 1623; 1503. Gilbert challenges these convictions on two grounds. First, he says the convictions are barred by collateral estoppel. Second, he argues that the convictions must be reversed

in the light of *U.S. v. Gaudin*, —— U.S. ——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995).

### A. Collateral Estoppel

Gilbert argues that his 1993 convictions are barred by the doctrine of collateral estoppel.[12] He says that to permit these charges would allow the government to rehash in 1993 an argument that failed to persuade the jury in 1990. *See, e.g., U.S. v. Sarno,* 596 F.2d 404, 408 (9th Cir.1979) (using collateral estoppel to bar perjury prosecution where acquittal in prior proceeding was based on jury accepting defendant's testimony as true).

▮ The doctrine of collateral estoppel is included within the constitutional prohibition of double jeopardy. *Ashe v. Swenson,* 397 U.S. 436, 445–46, 90 S.Ct. 1189, 1195–96, 25 L.Ed.2d 469 (1970). But, collateral estoppel bars a later prosecution "only where a fact or issue necessarily determined in the defendant's favor in the former trial is an essential element of conviction at the second trial." *U.S. v. Brown,* 983 F.2d 201, 202 (11th Cir. 1993).

▮ Therefore, Gilbert must persuade us that the jury's 1990 acquittal on the conspiracy charge was based on a finding that he lacked the criminal intent to further the money laundering enterprise. This Gilbert cannot do. Because Gilbert was convicted on several of the Travel Act counts, the jury necessarily concluded that he had the intent to promote the unlawful scheme. Thus, instead of relying on Gilbert's testimony, the jury actually rejected parts of it.[13]

Also, a collateral estoppel claim must fail where "a rational jury could have grounded

---

**11.** Gilbert was convicted under 18 U.S.C. § 1956(a)(2). We recognize that *Conley, supra,* and Senate Report No. 433, *supra,* discuss different sections of the money laundering statute. We also know that section (a)(2), unlike other portions of the statute, does not explicitly refer to "a financial transaction" as the crime. These points do not change our result. The statutory language, taken as a whole, manifests the intent by Congress to make each transaction or transfer a separate crime. *Cf. U.S. v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971) (requiring all ambiguity in criminal statute to be construed in favor of accused).

**12.** He does not challenge the sufficiency of the evidence supporting these convictions.

**13.** In addition, Gilbert testified for three days in 1990. The perjury charges spring from his responses to only two lines of questioning. Gilbert, who bears the burden of persuasion on the collateral estoppel issue, *U.S. v. Hewitt,* 663 F.2d 1381, 1387 (11th Cir.1981), is hard pressed to prove which, if any, parts of his lengthy testimony the jury relied upon in its 1990 verdict.

its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe v. Swenson*, 397 U.S. at 444, 90 S.Ct. at 1194. In this case, a rational jury could have based its conspiracy acquittal on a finding that Gilbert failed to agree to join the conspiracy.[14] Because Gilbert has been unable to carry his burden of persuasion, we conclude that the perjury and obstruction of justice convictions are not barred by collateral estoppel.

### B. *Gaudin* Error

In the 1993 trial, the jury did not decide whether Gilbert's false statements were material because it was then well established that materiality was a question of law. *See, e.g., U.S. v. Dennis*, 786 F.2d 1029, 1041 (11th Cir.1986). Thus, the trial court made the finding of materiality and so instructed the jury. We now know, however, that the constitution requires that the jury determine whether an allegedly false statement is "material" in a section 1623 prosecution. *See U.S. v. Gaudin*, —— U.S. ——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995); *Porat v. U.S.*, —— U.S. ——, 115 S.Ct. 2604, 132 L.Ed.2d 849 (1995). The rule announced in *Gaudin* applies retroactively to this direct appeal. *See Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987).

■ We review assertions of error which were not objected to at trial for plain error. *See* Fed. Rule Crim.P. 52(b); *U.S. v. Olano*, 507 U.S. 725, 732–34, 113 S.Ct. 1770, 1777,

123 L.Ed.2d 508 (1993). Gilbert, who did not object to the materiality instruction, asserts that plain error review is inappropriate and too unfavorable to him because no error occurred at trial to which he could object, except that shown by a later Supreme Court decision. Gilbert urges us to adopt a *per se* reversal rule for *Gaudin* violations. *Cf. U.S. v. Pearson*, 897 F.Supp. 1147, 1148 (C.D.Ill. 1995).

■ Instead, we follow the lead of the other circuits confronting this situation and conclude that Rule 52(b) plain error review is all that we are authorized to undertake.[15] *See U.S. v. Keys*, 67 F.3d 801, 809 (9th Cir.1995); *U.S. v. Rogers*, 18 F.3d 265, 268 (4th Cir.1994); *U.S. v. Retos*, 25 F.3d 1220, 1230 (3d Cir.1994); *U.S. v. Viola*, 35 F.3d 37, 42 (2d Cir.1994); *U.S. v. Jones*, 21 F.3d 165, 172–73 (7th Cir.1994); *but see U.S. v. Washington*, 12 F.3d 1128, 1138 (D.C.Cir.1994) (suggesting non–Rule 52(b) based "supervening-decision doctrine" applies).

■ Under these circumstances, reversal for unobjected-to error is possible (but not required) where error is both (1) plain and (2) affects substantial rights. *Olano*, 507 U.S. at 732–36, 113 S.Ct. at 1777–78. As we now know, the failure to submit the question of materiality to the jury is plain error.[16] But, Gilbert cannot show that the failure to submit the issue of materiality to the jury affected his substantial rights (that is, affected the outcome of his trial).[17]

**14.** In applying the doctrine of collateral estoppel, the Supreme Court, *Ashe v. Swenson*, 397 U.S. at 444, 90 S.Ct. at 1194, mandates us to "examine the record of a prior proceeding." A review of this record reveals that Gilbert discussed in closing (and that the jury was so instructed) that a conspiracy conviction would require a finding of an agreement. A finding of no agreement would reconcile the seemingly inconsistent RICO and RICO conspiracy verdicts. *See U.S. v. Brown*, 983 F.2d at 203 (noting that reviewing court must make "a practical and realistic assessment of what makes the jury verdict coherent").

**15.** This result is appropriate because Rule 52(b) is triggered where (as in this case) review is asked of error not brought to the attention of the trial court.

**16.** Some dispute surrounds whether error must be "plain" at the time of trial or "plain" when the case is being reviewed. *Compare Washing-*

ton, 12 F.3d at 1138 (error must be plain at time of trial), *with Retos*, 25 F.3d at 1230 (intervening decision can make error "plain"); *Jones*, 21 F.3d at 173 (same); *and Viola*, 35 F.3d at 42 (same). We conclude that error is "plain" under *Olano* where the "plainness" of error becomes apparent on direct review.

**17.** Some courts have suggested—relying on the Supreme Court's explanation in *Olano* that it was not confronting this kind of case—that a defendant has no burden to show his trial could have come out differently without the *Gaudin* error. *See Keys*, 67 F.3d at 810 (assuming without deciding defendant need not establish prejudice, but affirming conviction nonetheless); *cf. Viola*, 35 F.3d at 42 (adjusting *Olano* burden of persuasion). We decline to excuse Gilbert's burden of compliance with Rule 52(b) as interpreted in *Olano* and, thus, hold that he must persuade us that the error affected his substantial rights.

From the record before us, it is clear that Gilbert's denials of criminal knowledge (which the 1993 jury found—in a conclusion not challenged on appeal—to be lies) were capable of influencing the 1990 jury. *See Dennis,* 786 F.2d at 1041 n. 15 (defining "materiality"). Gilbert does not assert that the failure to submit the materiality issue to the jury affected the outcome of his case. (He instead argues for a *per se* rule of reversal.) He does not assert he was truly harmed, we presume, because a review of the record shows conclusively that the district court properly determined—and we are unconvinced that a reasonable juror could have found otherwise—that Gilbert's lies had the capability of influencing the 1990 jury.[18] Because Gilbert has failed to show that the failure to submit the issue of materiality to the jury affected the outcome of his trial, we affirm the perjury and obstruction of justice convictions.[19]

In addition, we stress that we see, given the evidence, no miscarriage of justice here.[20] Given the way in which the matter of materiality was handled in this case, we question that the fairness, integrity or public reputation of judicial proceedings were actually seriously affected. Thus, even if we had not placed the burden to satisfy the *Olano* prejudice requirement on Gilbert, we—on alternative grounds—would probably still decline to reverse Gilbert's convictions. *See Keys,* 67 F.3d at 810–812 (explaining why, under similar facts, court refused to reverse conviction).

## V. Bell Gardens Club Forfeiture

Gilbert argues that the forfeiture of his interest in the BGBC cannot stand because the jury found that the first racketeering activity he engaged in occurred after he had already acquired his interest in the BGBC. Thus, he says, his interest could not have been derived from his racketeering activity. The government responds that the jury, by its RICO conviction, found that Gilbert had been a member of the racketeering enterprise and that the BGBC forfeiture for Gilbert was correct because BGBC was built using Kramer drug money.[21]

The jury convicted Gilbert on three of ten Travel Act counts. That the Travel Act convictions related solely to activity which occurred after Gilbert acquired his interest in the BGBC is undisputed. The jury was instructed that to forfeit Gilbert's interest in

*See generally U.S. v. Gaudin,* 28 F.3d 943, 962–64 (9th Cir.1994) (Kozinski, J., dissenting) (explaining why it is inappropriate to create "nebulous exception" to *Olano* ). We also note that the *Olano* Court held that the burden-shifting to the defendant was "dictated" by the text of Rule 52(b). *Olano,* 507 U.S. at 734–36, 113 S.Ct. at 1778.

18. Because the district court actually made a finding (and the government produced conclusive evidence to show) that Gilbert's disputed testimony was material, this case is different than cases in other circuits finding the prejudice element of *Olano* satisfied. *See Viola,* 35 F.3d at 43 (prejudice where insufficient evidence to prove all elements of crime); *Rogers,* 18 F.3d at 267–68 (prejudice where *no* finding (by either judge or jury) on sufficiency of evidence for necessary element of crime); *Jones,* 21 F.3d at 172–73 (prejudice where government presented no evidence to establish necessary element of offense); *Retos,* 25 F.3d at 1232 (prejudice where evidence on essential element not conclusive).

19. Gilbert also argues his count 20 conviction under 18 U.S.C. 1503 for obstruction of justice should be reversed under *Gaudin.* He says the instruction on Count 25 (that the statements were material for section 1623 purposes) infect-ed the conviction under section 1503. Because we presume that the jury followed its instruction to determine for itself whether the government proved beyond reasonable doubt that Gilbert's testimony would be likely to have the natural and probable consequence of obstructing the 1990 trial, we reject this argument without relying on our affirmance of the count 25 perjury conviction.

20. Even where a defendant satisfies all three *Olano* prerequisites, an appellate court has only limited discretion to correct error. *Olano,* 507 U.S. at 736–37, 113 S.Ct. at 1779. Reversal under *Olano* may only be done, even where a defendant has carried the burden of showing prejudice, (1) where not to reverse would result in the conviction of a defendant actually innocent or (2) to protect the fairness, integrity or public reputation of judicial proceedings. *Id.*

21. We note that Gilbert was specifically acquitted of a RICO conspiracy charge, which means that the forfeiture must stand or fall solely on Gilbert's violation of the substantive RICO statute. *Cf. U.S. v. Persico,* 832 F.2d 705, 713–14 (2d Cir.1987) (distinguishing substantive RICO from RICO conspiracy for statute of limitation purposes).

the BGBC it must find beyond reasonable doubt that this interest was "obtained ... from the racketeering activity as charged in [the RICO count of the indictment]."

████ The RICO count listed ten racketeering acts alleged to have been committed by Michael Gilbert. Under the instructions, the jury was not allowed to forfeit Gilbert's interest by finding that he committed racketeering acts which were not also listed in the RICO count. Each racketeering act listed in the RICO count was also separately charged as a Travel Act offense. And, the jury was instructed that their previous determinations of guilt were conclusive and that "you must not seek to discuss or determine anew the guilt or innocence of ... Defendants." [22] Therefore, in earlier deciding Gilbert's guilt on the Travel Act counts, the jury also decided which acts of racketeering Gilbert had committed. Our consideration of these factors leads us to conclude that the forfeiture of Michael Gilbert's interest in the BGBC was improper. Property forfeitable in a RICO proceeding is limited to that which the defendant obtains directly or indirectly as a result of the racketeering activity. *See* 18 U.S.C. § 1963(a)(3). The only acts of racketeering which were both charged by the government and found by the jury to have been committed by Gilbert occurred after he had obtained his interest in the BGBC. Property acquired before a defendant commits an act of racketeering cannot be said to have been derived from it. As such, the forfeiture of Michael Gilbert's interest in the BGBC must be set aside.[23]

AFFIRMED in part, REVERSED in part.

**22.** Given the instructions, the jury could not properly and effectively find that while the government failed to prove the Travel Act offenses pre-dating Gilbert's BGBC interest beyond reasonable doubt, it did prove them by a preponderance of the evidence. *Cf., for example, U.S. v. Elgersma*, 971 F.2d 690, 695 (11th Cir.1992) (en banc) (upholding forfeiture under section 853(a) under preponderance of evidence standard).

**23.** Because we hold that Michael Gilbert's interest in the BGBC is not subject to forfeiture, neither are the interests of Karen Gilbert and MGIFT. And, orders restraining Michael Gilbert, Karen Gilbert or the MGIFT from the use

APPENDIX

*COUNT 19*

Between in or about January, 1987 and on or about November 20, 1987, in the Southern District of Florida and elsewhere, the defendants,

**M. DALE LYON,
STEPHEN B. FAINSBERT,
MICHAEL S. GILBERT,
JOHN DOE, a/k/a "ANGEL",**

co-conspirators Jack Kramer, Benjamin Barry Kramer, Melvyn Kessler, and others known and unknown to the Grand Jury, M. DALE LYON, MICHAEL S. GILBERT and/or STEPHEN B. FAINSBERT being citizens of the United States, did knowingly and willfully transport, and attempt to transport monetary instruments and funds from a place in the United States to and through a place outside the United States by performing the following activities, among others:

1. Causing the transportation of Bank of Beverly Hills cashier's check # 85810 in the amount of $9,500,000 from California to Switzerland on or about February 17, 1987; and

2. Causing the transportation of $9,500,000 from Switzerland to Luxembourg on or about October 14, 1987; and

3. Causing the transportation of $8,500,000 from Luxembourg to Liechtenstein on or about November 16, 1987; and

4. Causing the transportation of approximately $4,000,000 in cash from Liechtenstein to Switzerland on or about November 16, 1987;

and enjoyment of their interest in the BGBC, including profits, are to be, for them, set aside also.

Because the government, as we understand it, still does have some interest in the BGBC due to other forfeitures, we anticipate the district court will, in the light of the differing ownership interests, need to hold a hearing or hearings and to issue additional orders about the BGBC's future operations upon the district court's receiving of the mandate from this court.

Finally, because of settlement, the forfeiture appeal of third party claimants (No. 90–5431) is dismissed as moot.

knowing that the monetary instruments and funds involved in the transportation represented the proceeds of some form of unlawful activity and knowing that the transportation was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity.

In violation of Title 18, United States Code, Sections 1956(a)(2)(B)(i) and 2.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  91-897-CR-MORENO

UNITED STATES OF AMERICA,

      Plaintiff,

VS.

MICHAEL S. GILBERT,

      Defendant.

_____/

**VERDICT FORM**

FILED by _____ D

JUN 16 1993

I. G. CHELEOTIS
CLERK U. S. DIST. CT.
S.D. OF FLA.-MIAMI

We, the jury, find the Defendant, MICHAEL S. GILBERT:

| COUNT | GUILTY | NOT GUILTY |
|---|---|---|
| 17. | | ✓ |
| 19. | ✓ | |

If you find Michael Gilbert guilty of Count 19, then you must indicate which of the 4 activities listed in the indictment he committed:

1)____committed   ✓ not committed
2)_✓_committed   ____not committed
3)____committed   ✓ not committed
4)____committed   ✓ not committed

| | GUILTY | NOT GUILTY |
|---|---|---|
| 20. | ✓ | |
| 22. | | ✓ |
| 25. | ✓ | |
| 26. | | ✓ |

SO SAY WE ALL

Date: _____, 1993

FOREPERSON

  BARKETT, Circuit Judge, specially concurring:

I concur fully in the majority opinion except as to Parts I and IVB, in which I concur specially. I join the majority's conclusion in Part I that Gilbert's Travel Act convictions should be affirmed because I believe the government introduced sufficient evidence to support the convictions.

Regarding Part IVB, I likewise agree with the majority's conclusion that Gilbert's perjury conviction should be affirmed. However,

I disagree that it is a defendant's burden to demonstrate prejudice from unobjected-to plain error where the error becomes plain as a result of a supervening decision. I think the Second Circuit correctly determined that "when a supervening decision alters settled law, ... the burden of persuasion as to prejudice (or, more precisely, lack of prejudice) is borne by the government, and not the defendant." *United States v. Viola,* 35 F.3d 37, 42 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995); *see also United States v. Keys,* 67 F.3d 801, 810 (9th Cir.1995).

The reason for placing the burden on the government is explained by the Second Circuit in *Viola:*

> In the ordinary case, an event, such as the issuance of a jury instruction, occurs which is clear error under the law at the time of trial. Because the law is clear, the defendant is on notice of the duty to object. If he fails to object, he not only forfeits his legal right to have the error corrected, but he impedes the judicial process by failing to prompt the trial judge to make timely correction of the error. It is proper to hold a defendant accountable for that failure, and to deter defendants from strategically withholding an objection in order to seek reversal on appeal. The defendant rightly bears the burden of proving prejudice in the ordinary case.

> The situation is different when a supervening decision alters settled law. A defendant clearly has no duty to object to a jury instruction that is based on firmly established circuit authority. He cannot be said to have "forfeited a right" by not making an objection, since at the time of trial no legal right existed. If we were to penalize defendants for failing to challenge entrenched precedent, we would be insisting upon an omniscience on the part of defendants about the course of the law that we do not have as judges. Imposing such a duty would only encourage frivolous objections and appeals. When the source of plain error is a supervening decision, the defendant has not been derelict in failing to object at trial, and there is thus no cause to shift the burden of proving preju-

dice to the defendant. In this special context, as in harmless error review under Rule 52(a), the government must show that the error did not affect the defendant's substantial rights.

*Viola,* 35 F.3d at 42.

Nonetheless, I believe that the government has demonstrated that the failure to instruct on materiality did not affect Gilbert's substantial rights, i.e., the outcome of his trial. If the 1993 jury had been instructed on materiality, it would have been told that it could not convict Gilbert of perjury unless it determined that the allegedly false statements he made during his 1990 trial for participating in a RICO conspiracy to launder money could have affected the trial verdict. *See United States v. Dennis,* 786 F.2d 1029, 1041 n. 15 (11th Cir.1986) (defining "materiality"). The allegedly false statements made by Gilbert during the 1990 trial were that he had not known that boxes he delivered contained cash and that he had not authorized a $15,000 wire transfer to Miami. In my view, had the 1993 jury been instructed on materiality, it could not reasonably have found that these statements were not material to the money laundering charge. Thus, the government has shown that Gilbert was not prejudiced by the court's failure to give the instruction.