**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Rufus SIMS, Defendant–Appellant.**

**No. 96–1068.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1997.

Decided May 22, 1998.

Carol McNiven (argued), Barry Rand Elden, Chief of Appeals, Office of the United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellee.

Allan A. Ackerman (argued), Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, ROVNER and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Rufus Sims was charged in a nineteen-count indictment with a variety of crimes relating to his drug operations and associated financial transactions. A jury found him guilty under Count 8, which had charged conspiracy to launder money and illegally to structure transactions, in violation of 18 U.S.C. § 371, Counts 9, 10, 14, 16, and 18, which had charged specific acts of money laundering, and Counts 11, 15, and 17, which had charged specific acts of illegally structuring transactions. The same jury acquitted Sims of one money laundering count, one illegal structuring count, the drug conspiracy count, a count charging a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), a count charging violent crimes in aid of the racketeering organization, two counts of possession and distribution of cocaine, and one count of possession and distribution of heroin. On a motion by the United States before trial, the district court dismissed Counts 3 and 19, charging Sims with a RICO predicate act (arranging a murder) and money laundering.

Sims then filed two post-trial motions: a motion for judgment of acquittal on all counts of conviction, pursuant to Fed. R.Crim.P. 29, and a motion for a new trial, under Fed.R.Crim.P. 33. He argued there, and continues to argue here, that his acquittal on the drug conspiracy count necessarily negated all of the elements required to sustain a conviction on the substantive money laundering counts. He also argued that his acquittal on the RICO count was fundamentally inconsistent with his conviction on the remaining substantive counts. The trial court rejected his motions and sentenced him to 327 months in federal custody, a $500,000 fine, and a $450 special assessment. (Counts 9 and 15 dealt with crimes committed before November 1, 1987—the effective date of the Sentencing Reform Act of 1984 and the federal Sentencing Guidelines.) On appeal, he argues that the "plenary" jury exoneration he received on all the drug conspiracy and drug dealing counts requires the court as a matter of law to vacate his convictions on the remaining money laundering counts. He also argues that the district court's instructions to the jury and its "special verdict" form lead to the same result, because the jury did not fill in the special verdict form that asked about the predicate acts for the RICO count. Sims interprets the jury's action as a decision that he did not commit any of the predicate acts, which, he argues, would be inconsistent with its guilty findings on the money laundering counts.

Sims' argument makes some intuitive sense, but it runs into an insurmountable obstacle: the Supreme Court's decision in *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). In that case, the Court considered a question functionally identical to the one Sims makes: whether an acquittal on a count charging conspiracy to possess with intent to distribute cocaine and another count charging possession of a certain amount of cocaine with intent to distribute it, coupled with convictions on some counts sharing certain facili-

tating acts, were sufficiently inconsistent to require reversals of the convictions. Reaffirming its decision in *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), the Supreme Court responded with a resounding "no." The Court explained itself as follows:

We believe that the *Dunn* rule rests on a sound rationale that is independent of its theories of res judicata, and that it therefore survives an attack based upon its presently erroneous reliance on such theories. As the *Dunn* Court noted, where truly inconsistent verdicts have been reached, "[t]he most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." *Dunn, supra*, at 393, 52 S.Ct. at 190. The rule that the defendant may not upset such a verdict embodies a prudent acknowledgment of a number of factors. First, as the above quote suggests, inconsistent verdicts-even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.

469 U.S. at 64–65, 105 S.Ct. at 476–477. The Court noted also that the Government of course may not appeal from the possibly erroneous acquittals, because of the Double Jeopardy clause. *Id.* at 65, 105 S.Ct. at 476–477. *Powell* therefore stands for the proposition that inconsistent verdicts in criminal cases do not give rise to a right to a new trial or to a right to an acquittal on a related count. The jury's decision not to complete the special verdict form for the RICO count (which was understandable, since it had voted to acquit on that count and as a result there was no need to answer the questions on the form) does not affect the rationale of *Powell*.

In a final effort to avoid the inevitable, Sims argues that this court's decision in *United States v. Willoughby*, 27 F.3d 263 (7th Cir.1994), and the Eleventh Circuit's decision in *United States v. Kramer*, 73 F.3d 1067 (11th Cir.1996), reveal situations not governed by *Powell*, and set forth rules applicable to his case as well. We disagree. In *Willoughby*, the defendant had entered guilty pleas on charges of both distribution and possession with intent to distribute drugs. He also faced a weapons charge under 18 U.S.C. § 924(c), which proscribes using or carrying a firearm in relation to a drug offense. He went to trial on the gun charge and the district court convicted him. This court reversed on insufficiency of the evidence grounds, finding that there was no evidence that Willoughby had a gun with him while he was distributing drugs, and that would have been the only basis on which the district court could have convicted him given the wording of the indictment. This was straightforward sufficiency of the evidence review. Sims, in contrast, has not argued that the evidence was insufficient on its own to convict him of the money laundering counts. (There may be hints in his brief to this effect, but they are far too elliptical to satisfy our requirements for preserving arguments on appeal. Fed. R.App. P. 28(a)(6); *Kerr v. Farrey*, 95 F.3d 472, 481 (7th Cir. 1996).) We therefore see nothing in *Willoughby* that purports to identify an exception to the *Powell* rule or that would otherwise help Sims.

*Kramer* is similarly unhelpful. In that case, the Eleventh Circuit reversed a RICO forfeiture imposed on Kramer's co-defendant Gilbert, where the basis for Gilbert's substantive RICO conviction was inconsistent with the jury's forfeiture verdict. Inconsistent RICO convictions and forfeiture verdicts are no more problematic than inconsistent verdicts on substantive offenses. See, e.g., *United States v. Williams*, 809 F.2d 1072, 1097 (5th Cir.1987). What troubled the Eleventh Circuit panel in *Kramer* was the jury's failure to follow the district court's instruction on the forfeiture question, in which the court had ordered the jury to render consistent verdicts on the RICO and forfeiture counts. Furthermore, given that Gilbert's forfeiture was a penalty for the very RICO conviction that the jury had earlier imposed, it is perhaps understandable that the Elev-

enth Circuit relied on the RICO verdict when reviewing the forfeiture. It was on this basis that the court of appeals set aside the forfeiture. *Kramer,* 73 F.3d at 1075–76. Given both the absence of a completed verdict form in this case revealing the specifics of the jury's thinking, and the substantial differences between the circumstances in *Kramer* and this case, we can save for another day the question whether we agree with the Eleventh Circuit's *Kramer* decision.

In any event, given the broad rationale of *Powell,* we are doubtful that the existence of a completed special verdict form would justify vacating a conviction on a separate count. *Powell* quoted with approval Justice Holmes' language in *Dunn* that "[e]ach count in an indictment is regarded as if it was a separate indictment. . . . The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." 469 U.S. at 62–63, 105 S.Ct. at 475 (internal quotations omitted).

The judgment against Sims is AFFIRMED.