[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 20 2001
THOMAS K. KAHN
CLERK

----------------------
No. 99-13223
----------------------
D. C. Docket No. 97-00581-CR-JAL

UNITED STATES OF AMERICA,

Plaintiff-Appellee.

versus

MICHAEL H. TARKOFF,

Defendant-Appellant,

------------------------
Appeal from the United States District Court
for the Southern District of Florida
------------------------
**(February 20, 2001)**

Before WILSON, KRAVITCH and COX, Circuit Judges.

KRAVITCH, Circuit Judge:

I.  Issue

This appeal presents an issue of first impression in this circuit: whether a defendant may be convicted for conspiring to violate and violating the money laundering statute, 18 U.S.C. § 1956(h) and (a)(1)(B)(i), where the indictment charged and the government proved that the two monetary transactions at issue occurred wholly outside the United States.

## II. Facts

Michael Tarkoff appeals his conviction for conspiracy to commit money laundering, 18 U.S.C. § 1956(h), and two counts of money laundering, 18 U.S.C. § 1956(a)(1)(B)(i). In early 1995, Tarkoff, a criminal defense lawyer, represented Ismael Arnaiz, who was a target of a grand jury investigation of a scheme in which Arnaiz and his business partner, Akioshi Yamada, defrauded Medicare. Arnaiz and Yamada's scheme consisted of paying people to "recruit" sham patients to visit Arnaiz and Yamada's medical clinics and provide their Medicare numbers to the billing clerk. The clinics would then bill Medicare for medical services that either had not been provided to the sham patients, or if provided, were not necessary. During a two-and-one-half year period, the clinics fraudulently billed Medicare $120 million.

During negotiations in 1995 regarding a plea bargain for Arnaiz, Assistant United States Attorney ("AUSA") Marc Garber informed Tarkoff that Arnaiz's

2

scheme resulted in losses to Medicare of approximately $20-$40 million. At that time, Tarkoff did not claim that Arnaiz was not guilty of Medicare fraud, but merely argued that the $20-$40 million dollar figure was too high and that Arnaiz caused losses to Medicare of only $6 million (the dollar amount was relevant to sentencing Arnaiz). In addition, Tarkoff did not indicate that Arnaiz had any legitimate sources of income, but repeatedly represented that Arnaiz had no significant assets. Moreover, Melissa Rockhill, Tarkoff's legal secretary at the time, testified that Tarkoff acknowledged to her that Arnaiz was involved in Medicare fraud.

Rockhill also testified that in late January or early February 1996, Tarkoff told her that he and another attorney who had dealings with Arnaiz, Joaquin "Jack" Fernandez, had discussed the need to move Arnaiz's money in order to hide it from the United States government. On February 2, 1996, Tarkoff met with FBI Agent Gramlich and the AUSA then responsible for the case, at which meeting Agent Gramlich told Tarkoff that all of the money in Arnaiz's possession came from Medicare fraud, was subject to seizure by the government, and was not to be moved.

Between February 5 and 8, 1996, there were three wire transfers totaling approximately $470,000 from two Smith Barney accounts in Miami that were controlled by Arnaiz, to an account in the name of Rockside Enterprises at a bank in Curacao.[1] The source of the funds in those accounts was Arnaiz's Medicare fraud. Tarkoff and Fernandez, using United States passports, traveled from the United States to Israel on February 10, 1996, and each opened a numbered account at the Bank Hapoalim in Tel Aviv on February 12, 1996. Rockhill and Cheryl Crane, Fernandez's girlfriend at the time, accompanied Tarkoff and Fernandez on this trip. On February 16, $400,000 was transferred from the Rockside Enterprises account in Curacao to Fernandez's Israeli account. Tarkoff told Rockhill that the $400,000 was Arnaiz's money, and that it was being routed from Curacao to Israel in order to hide it from the government. Fernandez gave power of attorney over his account to Sharon Gershoni, an Israeli attorney whom Tarkoff had recommended, and she directed that $50,000 of the $400,000 deposited in Fernandez's account be transferred to Tarkoff's account. On February 20, 1996, also at Gershoni's direction, two bank drafts of $50,000 each were made payable to Jack Fernandez from Fernandez's Israeli account. Those checks subsequently were

---

[1]The indictment did not charge Tarkoff with–nor was he convicted for–participating in these transfers of funds from Miami to Curacao.

deposited into two Miami accounts controlled by Fernandez. Some of this money was routed to Arnaiz.

Tarkoff gave Rockhill the documents relating to his Israeli bank account to store in a safe deposit box in her home town of Indianapolis, Indiana, in order to avoid their discovery in the event his home or office was searched. Tarkoff also instructed Rockhill to deny any knowledge of the bank transactions in Israel if she was questioned by the government. Tarkoff did not tell his accountant about the $50,000 in his Israeli account until after he learned that his accountant had received a grand jury subpoena for Tarkoff's financial records in 1997.

Tarkoff raises several issues on appeal: (1) whether his conviction for conspiring to violate and violating the money laundering statute can stand where the indictment charged and the government proved that the two transactions at issue occurred wholly outside the United States; (2) whether the evidence is sufficient to support a finding that Tarkoff knew the money involved in the transactions was the proceeds of some form of unlawful activity; (3) whether the district court erred by excluding certain documentary evidence that Tarkoff offered to corroborate his testimony that he reasonably believed the money was derived from a lawful source; (4) whether the district court erred by prohibiting any reference to the prior trial and acquittal of Fernandez during Tarkoff's cross-

5

examination of Agent Gramlich; (5) whether the district court erred by excluding the proffered testimony of attorney Jay Levine, who would have testified that Tarkoff told him that Arnaiz had legitimate assets; (6) whether the district court erred by denying Tarkoff's motion for mistrial where the prosecutor argued in closing that there was no evidence to corroborate Tarkoff's testimony that he believed Arnaiz had legitimate sources of income; (7) whether the district court erred by refusing to instruct the jury on Tarkoff's defense of "good faith reliance" upon the representations made by Arnaiz and the AUSA; and (8) whether the district court erred by instructing the jury on the theory of "deliberate ignorance." Only the first of these issues merits discussion. Applying the legal framework discussed below, we conclude that the record supports Tarkoff's conviction for conspiracy to commit money laundering, 18 U.S.C. § 1956(h), and two counts of money laundering, 18 U.S.C. § 1956(a)(1)(B)(i), and therefore affirm.

### III. Standard of Review

Whether there is sufficient evidence to support a conviction is a question of law which this Court reviews de novo. See United States v. Majors, 196 F.3d 1206, 1210 (11th Cir. 1999). The relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

6

could have found the essential elements of the crime beyond a reasonable doubt."

Jackson v. Virginia, 443 U.S. 307, 319 (1979).

## IV. Discussion

Tarkoff contends that he was entitled to judgment of acquittal because the transactions in which he took part occurred wholly outside the United States, and therefore did not affect interstate or foreign commerce, which is a necessary component of an element of the money laundering statute under which he was convicted. Tarkoff's convictions are based on his participation in two transactions: (1) the wire transfer of $400,000 from Curacao to Fernandez's bank account in Israel, and (2) the transfer of $50,000 of those funds to Tarkoff's Israeli bank account. For his role in these transactions, Tarkoff was convicted of conspiring to violate 18 U.S.C. § 1956(a)(1)(B)(i), see 18 U.S.C. § 1956(h), and violating section 1956(a)(1)(B)(i), which provides:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location,

7

the source, the ownership, or the control of the proceeds of specified unlawful activity [shall be fined or imprisoned or both].

The four elements of this offense are that the defendant (1) knowingly conducted a "financial transaction," (2) which he knew involved funds that were the proceeds of some form of unlawful activity, (3) where the funds involved in the financial transaction in fact were the proceeds of a "specified unlawful activity," and (4) that the defendant engaged in the financial transaction knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of such unlawful activity. See United States v. Majors, 196 F.3d 1206, 1212 (11th Cir. 1999) (listing elements of 18 U.S.C. § 1956(a)(1)(B)(i) offense). Because the evidence is sufficient to prove that Tarkoff correctly believed that the funds involved in the Israeli transactions were the proceeds of Arnaiz's Medicare fraud,[2] and that Tarkoff participated in conducting the transactions knowing that they were designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the Medicare fraud, we address only the first element of a section 1956(a)(1)(B)(i) offense–that is, whether the Israeli transactions satisfy the statutory definition of "financial transaction."

---

[2]Arnaiz's Medicare fraud satisfies the definition of "specified unlawful activity" contained in 18 U.S.C. § 1956(c)(7)(A) because it involved mail fraud.

8

The statute defines "financial transaction" as "(A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments . . . , or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree." 18 U.S.C. § 1956(c)(4). Tarkoff argues that because the two transactions with the Israeli bank occurred wholly outside the United States, they were not "financial transactions" under 18 U.S.C. § 1956(c)(4). In support of this proposition, Tarkoff relies primarily on United States v. Kramer, 73 F.3d 1067 (11th Cir. 1996), in which this Court reversed a money laundering conviction under 18 U.S.C. § 1956(a)(2)(B)(i) because the defendant participated only in a transfer of money from Switzerland to Luxembourg, and not a transfer of money to or from the United States, as required to violate section 1956(a)(2)(B)(i). See 73 F.3d at 1072-73. Kramer does not control in this case, however, because Tarkoff was convicted under a different subsection of the money laundering statute (§ 1956(a)(1)(B)(i)) than the one at issue in Kramer. The difference between the two subsections is that violation of the subsection at issue in Kramer specifically requires a transfer of funds to or from the United States, see 18 U.S.C. § 1956(a)(2)(B)(i), whereas a violation of the subsection under which Tarkoff was

9

convicted can occur so long as the defendant was involved in a "financial transaction." See 18 U.S.C. § 1956(a)(1)(B)(i).

There are two ways to establish that a defendant conducted a "financial transaction" under 18 U.S.C. § 1956(a)(1)(B)(i). To satisfy its burden, the government had to prove either (1) that Tarkoff participated in a transaction that in any way or degree affected interstate or foreign commerce and involved the transfer of funds or the use of one or more monetary instruments, see 18 U.S.C. § 1956(c)(4)(A),or (2) that Tarkoff participated in a transaction that involved the use of a financial institution that was engaged in, or the activities of which affected, interstate or foreign commerce in any way or degree. See 18 U.S.C. § 1956(c)(4)(B).

The government argues that it proved Tarkoff participated in a "financial transaction" as defined in section 1956(c)(4)(A) by virtue of the evidence that Tarkoff and Fernandez, two U.S. citizens, traveled from the United States to Israel to transact business with a bank there, and that the Israeli bank transactions required telephone communication between Israel and Miami, and between Miami and Curacao, to arrange for the funds transfer from Curacao to Israel. We agree that these facts support a finding that Tarkoff participated in a "financial transaction" as that term is defined in 18 U.S.C. § 1956(c)(4)(A) because the

10

international travel and communication required to execute the wire transactions affected foreign commerce "in any way or degree."[3]  The evidence also supports a finding that Tarkoff participated in a "financial transaction" as that term is defined in 18 U.S.C. § 1956(c)(4)(B) because the transactions involved the use of the Israeli bank–a financial institution which, by communicating with parties in the United States and providing banking services to United States citizens, was a "financial institution that was engaged in, or the activities of which affected, foreign commerce in any way or degree."

## V.  Conclusion

Because Tarkoff knowingly participated in a financial transaction designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity, we affirm his conviction for violating and conspiring to violate 18 U.S.C. § 1956(a)(1)(B)(i). AFFIRMED.

---

[3]The district court instructed the jury that "the term 'interstate or foreign commerce' includes any commercial activity that involves transportation or communication between places in two or more states or between some place in the United States and some place outside the United States."  We note that Tarkoff's travel from the United States to and from Israel and the telephone communication between the Israeli and Miami banks constituted "interstate or foreign commerce" under this definition.

11