**UNITED STATES of America, Plaintiff,**

v.

**Darwin MONTANA, Defendant.**

**No. 98 CR 54.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 4, 1998.

Matthew C. Crowl, United States Attorney's Office, Chicago, IL, for U.S.

Phillip A. Turner, Turner, Latz & Olmstead, Chicago, IL, for Darwin Montana.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District J.

On June 11, 1998 the jury in this criminal case found Darwin Montana ("Montana") not guilty on Count One and guilty on Counts Two and Three of the three-count indictment.[1] After defense counsel Luis Galvan ("Galvan") had filed motions for a judgment of acquittal and for a new trial, new counsel Phillip Turner ("Turner") entered an appearance for Montana in substitution for Galvan, was granted additional time to file supplemental post-trial motions and has now filed a supplemental motion for new trial. For the reasons stated in this memorandum opinion and order, all motions filed on Montana's behalf are denied.

1. Codefendant James Dodd ("Dodd") entered a guilty plea on the morning of trial and was later

*Motion for Judgment of Acquittal*

Before being replaced by Turner, trial attorney Galvan moved under Fed. R.Crim.P. ("Rule") 29 that the jury verdict on Counts Two and Three be set aside in favor of a judgment of acquittal. But the motion correctly concedes that the high hurdle that defense counsel must surmount for that purpose is to demonstrate that the evidence taken in the light most favorable to the prosecution failed to prove Montana's guilt beyond a reasonable doubt—indeed, as reconfirmed in such cases as *United States v. Sax*, 39 F.3d 1380, 1394 (7th Cir.1994), a conviction is to be reversed "only if no rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt." Montana plainly fails to meet that test.

If anything about the outcome of the trial was surprising in light of the evidence, it was not Montana's conviction on Count Two or Count Three, but rather his acquittal on Count One. Any possible inconsistency within the verdict would not of course be a ground for relief (see, e.g., *United States v. Sims*, 144 F.3d 1082, 1083–84 (7th Cir.1998), adhering to the definitive pronouncement in *United States v. Powell*, 469 U.S. 57, 64–65, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984)). And in this instance, not only was there no necessary inconsistency in the jury's determinations but—more importantly—the proof of Montana's guilt as to both Counts Two and Three was overwhelming.

It was conceivable for the jury (even though a not guilty verdict on Count One would most likely be considered to have been against the manifest weight of the evidence if this were a civil case) to credit the story, as told by Dodd, that Montana had repeatedly urged Dodd not to carry out his announced plans to rob a bank. That in turn was the only real linchpin in the evidence for a conclusion that, until the robbery was actually committed, Montana was unaware of Dodd's intention to rob the bank on the day of the

called as a witness on Montana's behalf.

event—thus supporting the jury's determination that Montana should be acquitted on the Count One conspiracy charge. But even on that premise, it was surely in order for the jury also to determine that all the circumstances of Montana's and Dodd's conduct once Dodd reentered the car after he had knocked off the bank—at that point wheelman Montana then sped away (while Dodd was in the back seat stripping himself of the outer set of clothes that he had worn to commit the robbery), at the same time forcing law enforcement people in several cars to engage in a high-speed chase (up to 65 miles per hour in a residential area) until Montana's evasive tactics and high speed driving caused the car to crash into the porch of a residence and come to a stop—supported Montana's conviction on Count Two.

In that respect, the jury was instructed in connection with the Count Two bank robbery charge that one way in which the government could obtain a guilty verdict was to prove beyond a reasonable doubt that Montana was guilty of the Count One conspiracy charge, coupled with proof beyond a reasonable doubt of the several substantive elements of a bank robbery charge. That instruction was of course rendered inapplicable by the Count One acquittal. But the jury was also given the following instruction:

Any person who knowingly aids, abets, counsels, commands, induces or procures the commission of a crime is guilty of that crime. However, that person must knowingly associate with the criminal venture, participate in it, and try to make it succeed.

If you then find that the government has proved beyond a reasonable doubt each of the propositions stated in the instruction regarding the Count Two charge of bank robbery, except for the references to conspiracy in that instruction, and if you further find that the government has proved beyond a reasonable doubt that defendant acted in the manner described in this instruction with respect to James Dodd's

commission of the crime of bank robbery, you may find defendant guilty of the charge in Count Two.[2]

It was certainly rational for the jury to have found each of those elements to have been proved beyond a reasonable doubt.

■ As for Count III, the applicable jury instruction was this:

In Count Three, defendant is charged with knowingly using and carrying a firearm during and in relation to a crime of violence. To sustain that charge the government must prove each of the following propositions beyond a reasonable doubt:

First, that defendant is guilty of the charge of bank robbery in Count Two; and

Second, that James Dodd knowingly used or carried a handgun during and in relation to the bank robbery.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find defendant guilty of Count Three.

If, on the other hand, you find from your consideration of all of the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find defendant not guilty of Count Three.

In light of what has just been said as to Count Two, coupled with the uncontroverted testimony that Dodd knowingly used a handgun during the bank robbery, Montana's conviction on that count is equally impregnable to attack.

*Motions for New Trial*

Trial attorney Galvan also filed a Rule 33 motion for new trial on the same grounds that were later asserted and amplified by Turner (Galvan had also added the general proposition that denial of the motion "would result in a miscarriage of justice"). Because the later Turner motion elaborated on the same grounds that Galvan had advanced, this

---

**2.** [Footnote by this Court] Although this Court has not been provided with a transcript of the jury instruction conference or of the in-court proceedings after this Court had so instructed the jury, its recollection is that the just-quoted

instruction was not the subject of an objection. Even if it had been, however, the instruction is clearly an accurate statement of the law of aiding and abetting a criminal offense.

opinion will focus on the reasons set out in Turner's supplemental motion for new trial.

■ First, that motion complains about the fact that Galvan's calling Dodd as a defense witness, which it will be remembered provided the only evidence—by reporting Montana's asserted statements that rejected any involvement in Dodd's repeated statements of intent to rob a bank—that potentially separated Montana from Dodd's advance planning of the bank robbery, exposed Montana's prior criminal record to the jury because of the operation of Fed.R.Evid. 806. According to attorney Turner, that demonstrates inadequate representation on the part of trial attorney Galvan.[3] But on objective scrutiny that contention cannot be viewed as supporting a new trial.

This Court need not decide whether, as Turner contends, trial attorney Galvan was unwittingly ensnared in the manner that is described succinctly in 5 Jack Weinstein & Margaret Berger, *Weinstein's Federal Evidence* § 806.04[2][b], at 806–11 to 806–12 (Joseph McLaughlin ed., 2d ed.1998):

> Rule 806 can set a trap for criminal defense counsel. A defendant who chooses not to testify but who succeeds in getting his or her own exculpatory statements into evidence runs the risk of having those statements impeached by felony convictions.

Quite apart from any considerations involved in addressing such a Monday morning quarterback type of argument, which seeks to second guess the conduct of trial counsel on the firing line, Turner has himself unwittingly provided what may be the best evidence that any possible misjudgment in that respect did not prejudice Montana.[4]

As the predicate for Turner's argument that Montana was prejudiced by Galvan's claimed slip (which Turner said "allow[ed] the government to produce before the jury devastating information regarding defendant Montana's criminal history"), Supp. Motion at 2 states:

> This information regarding defendant Montana's criminal history was elicited in a trial where the evidence against defendant Montana could not be classified as overwhelming. The fact that the evidence was not overwhelming is demonstrated by the jury's contradictory verdict.

But it must be remembered that Montana's criminal convictions became permissible impeachment (see, e.g., *United States v. Noble*, 754 F.2d 1324, 1331 (7th Cir.1985)) specifically because Dodd testified to the asserted repeated statements by Montana (which were hearsay because offered for their truth) that Montana wanted nothing to do with Dodd's earlier-announced plans to rob the bank and that Dodd should not proceed with those plans himself. Dodd's further testimony described the circumstances that assertedly led to Montana's driving the car that morning—testimony that would have had little force were it not for the just-described exculpatory statements ascribed to Montana. On that score the proof of the pudding is in the eating:

1. Those hearsay statements plainly had to have the controlling direct impact on the jury's acquittal of Montana on the Count One conspiracy charge. Without those statements the jury really had no material evidentiary basis for separating the two defendants in that respect.

2. It cannot be gainsaid that the knowledge of Montana's criminal record obviously did *not* stop the jury from reaching that

---

**3.** After this opinion had been dictated and while it was being transcribed, Turner brought to this Court's attention—by submitting a Citation of Additional Authority—the recent state court decision in *People v. Valentine*, 233 Ill.Dec. 172, 700 N.E.2d 700 (Ill.App. 1998). *Valentine* dealt with a defense counsel who, by eliciting direct testimony from his client that he had assertedly not been arrested on any charge involving violence, opened the door to impeachment by a showing of prior arrests for unrelated battery charges. Just reading the *Valentine* opinion shows that it does not bear at all on the wholly non-parallel situation presented here.

**4.** This Court should not be misunderstood as suggesting that a single mistake by Galvan—even if it was that—would support a claim of inadequate representation by counsel. To the contrary, this Court's observation of the entire trial confirms that Galvan did a highly competent job as Montana's lawyer—not the least for the reasons next discussed in the text.

Count One acquittal. That, coupled with the jury's demonstrated ability to consider the three counts separately as it was instructed to do by this Court, effectively torpedoes any notion of prejudice—let alone unfair prejudice—that could arguably have stemmed from the disclosure of Montana's prior criminal record.

What if Galvan had not called Dodd to the stand to offer those assertedly exculpatory statements by Montana? In that event, the only other way in which the same information about Montana's claimed repeated rejections of any involvement in Dodd's admitted intention to carry out the bank robbery could have been placed before the jury would have been through calling Montana himself to the stand. And of course *that* course of action would have provided the jury more detailed and at least equally damaging information as to Montana's prior criminal record (certainly on cross-examination, if the matter was not indeed fronted on direct examination in an effort to blunt its force). Moreover, it would seem that a jury might more readily credit the testimony of a codefendant who has admitted his own guilt but who gives a clean bill of health to the alleged coconspirator on trial than the jury would tend to credit the unsupported self-serving statements of a testifying defendant himself.

■ As the next line of attack on trial counsel Galvan, Turner unfairly criticizes Galvan on the ground that the latter had (admittedly in all innocence) conveyed a note from Dodd to Montana's mother. That represents the least defensible kind of post-hoc analysis—when Galvan was asked to transmit the note there was nothing whatever to suggest anything suspicious in that respect (Dodd was also a friend of Montana's parents), let alone any knowledge of the possibility that what was involved was an effort by Dodd to sell his exculpatory testimony for a price.

■ Finally, the supplemental motion attacks the handling at trial of information that was learned only after the government had rested its case, when Deputy United States Marshal John Jaehnig testified that while he was transporting Dodd back to the lockup after the latter had entered his change of plea, the Deputy heard Dodd tell Montana that he would testify for Montana and, as the Marshal testified, said:

> Let him know it's going to be $10,000.00 and he had said let—either: let your father know or let him know that it's going to be $10,000.00.

Under those circumstances, it was entirely proper to put that evidence before the jury in the limited manner that this Court allowed. Nothing in Turner's submission in that respect calls for the granting of a new trial either.

### Conclusion

Both the motion for a judgment of acquittal and the two motions for a new trial are without merit. As stated earlier, all are denied.